No. 39,725

MARION D. COBLE, *Appellee* and *Cross-Appellant*, v. BRUCE WILLIAMS, d/b/a BRUCE WILLIAMS LABORATORIES, and EMPLOYERS CASUALTY COMPANY, *Appellants* and *Cross-Appellees*, NATIONAL LEAD COMPANY, ST. LOUIS SMELTING AND REFINING DIVISION, *Cross-Appellee*.

(282 P. 2d 425)

Opinion filed April 9, 1955.

*Roy Kirby,* of Coffeyville, argued the cause, and *Clement H. Hall,* of Coffeyville, and *F. H. Richart,* of Joplin, Missouri, were with him on the briefs for appellants.

*Sylvan Bruner,* of Pittsburg, argued the cause, and *Joe L. Henbest,* of Columbus, and *Morris Matuska,* of Pittsburg, were with him on the briefs for the appellee and cross-appellant Marion D. Coble.

*Marc. Boss,* of Columbus, argued the cause, and *Ben T. Owens,* of Miami, Oklahoma, was with him on the briefs for the cross-appellee National Lead Company.

The opinion of the trial court was delivered by

WERTZ, J.: This was an action by claimant Marion D. Coble, appellee and cross-appellant, hereinafter referred to as claimant, to recover compensation under the Workmen's Compensation Act against respondent appellant Bruce Williams, doing business as Bruce Williams Laboratories, his immediate employer, hereinafter referred to as Williams and respondent, and Employers Casualty Company, its insurance carrier, and appellee National Lead Company, St. Louis Smelting and Refining Division, hereinafter referred to as Lead Company.

The commissioner of Workmen's Compensation denied compensation to claimant from either of the respondents. On appeal, the district court considered the record made before the commissioner, and allowed claimant compensation against Williams and his insur-

ance carrier, but sustained the order of the commissioner denying compensation as against the Lead Company. Williams and his insurance carrier have appealed from the judgment of the trial court, and claimant has cross-appealed from the order denying compensation against the Lead Company.

There is little dispute concerning the facts. The Lead Company was engaged in the mining business, and operating what was known as the Ballard mine in Kansas. As a part of its operation, the Lead Company had at the Ballard mine an underground lead and zinc mine and a mill in which it treated ore from the mine and the district. It was engaged in an underground mining operation, including the treating and processing of ores after they were brought to the surface. Assaying of metals produced was done in connection with the mining operation to determine where to mine for metallurgic control within the benefication process and for the settlement of royalties on ores mined from leased ground. The Lead Company regularly had its assaying work done on the metals brought out of the ground. After the ore was brought to the surface, the crude mining rock was crushed and sampled, and the assaying was done on the samples. The samples were obtained by automatic samplers and occasionally spot checked with hand samplers. The Lead Company employed men to procure these samples at the mill, it being a daily process. After they were obtained, they were placed in various receptacles and picked up by the Bruce Williams Laboratories for assaying at Joplin, Missouri. The number of samples prepared for such assaying varied from twenty to fifty per day, and the information contained from the assaying report from Williams was used in the mining process. After the Lead Company employees put the samples in the receptacles, the samples were tagged and numbered. The Lead Company determined for what purpose the samples were to be assayed.

Respondent and appellant Williams, a resident of Joplin, operated a testing laboratory under the trade name of Bruce Williams Laboratories. In this business, he made independent tests, both physical and chemical, on different materials, ores and minerals. His operations included the collecting of ore samples and the making of assays of said ores produced in the mines of the tri-state area of Kansas, Missouri and Oklahoma. For several years, Williams had been doing assaying work for the Lead Company of ore and ore samples produced at the Ballard mine of the Lead Company in

Cherokee county under an oral contract between Williams and the Lead Company and, after making the tests, reports were made to the Lead Company by Williams to be used in its mining operation.

Claimant Coble was an employee of Williams, and his duties required him to go to the Ballard mine of the Lead Company and pick up ore samples obtained from ores produced in its mining operations, load them into a pickup truck at the mine and transport them to Williams Testing Laboratory at Joplin, where these samples were processed and assayed for the Lead Company, the findings from the assays being used as a part of its mining operations. These samples of ore were left by the mining company at a specified place about the mine to be gathered by the claimant, who spent from forty minutes to two hours on the Lead Company's premises each day, part of claimant's duties being to see that the samples and the containers were properly tagged and arranged. On July 20, 1953, while claimant was engaged in loading a container of ore samples weighing some 100 pounds into his truck furnished by Williams, he sustained an injury to his back for which claim was made. The question of the injuries and the amount of compensation are not in issue on this appeal. The claimant continued to work a few days under pain and difficulty, and on July 25 was unable to continue. Subsequently, on August 11, Williams sent claimant to doctors and a clinic in Joplin where medical treatment for his injuries was given, and such treatment was continued until the trial of this action. Claimant made demand for compensation on Williams on November 2, 1953, and filed his claim before the Workmen's Compensation Commissioner on November 17, 1953. At the hearing on this claim before the Commissioner on December 29, testimony was taken and the case continued until January 11, 1954, when claimant filed an amended application for compensation enlarging his claim, naming the Lead Company as an additional respondent.

After considering the entire record, the trial court in a well-considered memorandum opinion found a principal-contractor relationship existed between Williams and the Lead Company on the basis that the work being performed by claimant was a part of the mining business being carried on by the Lead Company; that timely claim for compensation had been made by claimant against Williams, his immediate employer, but no claim had been made against the Lead Company within the period provided by statute, and

therefore the Lead Company was not liable to claimant in the proceedings.

It is Williams's contention that he did not elect to come within the provisions of the Workmen's Compensation Act of Kansas, did not have five employees in Kansas; that the work being performed by him was not hazardous nor a part of the Lead Company's mining business and, accordingly, he was not liable under the Act.

As stated, the trial court found a principal-contractor relationship between Williams and the Lead Company, and that the work being performed by Williams was a part of the trade or business of mining being carried on by the Lead Company. In a workmen's compensation case, it is the function of the trial court to pass upon the facts, and its factual findings cannot be disturbed on appellate review if they are supported by any substantial, competent evidence. Whether the judgment of the trial court in such an action is supported by substantial, competent evidence is a question of law as distinguished from a question of fact. (G. S. 1949, 44-556; *Silvers v. Wakefield,* 176 Kan. 259, 270 P. 2d 259; *McDonald v. Rader,* 177 Kan. 249, 277 P. 2d 652, and cases therein cited.)

In determining whether the principal-contractor relationship existed between Williams and the Lead Company, and to whom claimant should look for compensation, the first test to be applied is, "Whose work was being performed?" out of which the injury arose, and if such work was an integral part or a reasonable incident of the trade or business of one person who undertook to have the work performed for him by another, then the relationship of principal-contractor exists. (See *Bright v. Bragg,* 175 Kan. 404, 264 P. 2d 494, and cases therein cited at p. 410.) The injury complained of occurred on the premises of the Lead Company just outside the crushing plant at its mill. Claimant's evidence tended to show that the securing of ore samples was an important factor in the successful operation of the mining company's business. It indicated that in some instances assays were absolutely necessary that royalties could be calculated and determinations made as to where to mine. If the Lead Company did its own assaying, and claimant was employed directly by it for the purpose of collecting samples and taking them to the laboratory for assaying, we could not say that a claim for compensation should be denied on the basis that such work being performed was no part of the business of the Lead Company. There is no question but that the business of

the Lead Company was mining. The trial court found that the work being performed by Williams was an integral part of the trade or business of mining carried on by the Lead Company.

G. S. 1949, 44-507, provides that the Workmen's Compensation Act shall apply to mines and building work, without regard to the number of workmen employed. Section 44-508 defines a "mine" as an opening in the earth for the purpose of extracting any minerals, including all the appurtenant structures at or about the openings of the mine, and any adjoining, adjacent work place where the materials from the mine are prepared for use or shipment.

In applying the mentioned statutes to the facts in the instant case, it is apparent that Williams was bound by the provisions of the Act, regardless of the number of his employees. Claimant, as his employee, was engaged in doing mining work for his immediate employer, Williams, on the premises of the Lead Company at the time he received his injury. (*Wells v. Eagle-Picher M. & S. Co.*, 148 Kan. 794, 798, 799, 85 P. 2d 22.) There was competent evidence to support the findings and judgment of the trial court in favor of claimant and against Williams.

Williams next contends that neither the Kansas Workmen's Compensation Commission nor the district court of Cherokee county had jurisdiction to hear and determine the action for the reason that such action was within the exclusive jurisdiction of the Missouri court. Williams was a Missouri resident with his principal place of business in Missouri. Claimant was a resident of Oklahoma. The contract of employment was entered into in Missouri. The work by Williams and his employee, the claimant, was being performed in Kansas, and the claimant's injury occurred on the premises of the Lead Company in Kansas.

G. S. 1949, 44-501 provides if in any employment to which the compensation act applies, personal injury by accident arising out of and in the course of employment is caused to a workman, his employer shall be subject to pay compensation to the workman in accordance with the provisions of the act. Section 44-506 contains the only exception as to the applicability of the act and that is, it shall not be construed to apply to business or employment which, according to law, are so engaged in interstate commerce as to be not subject to the legislative power of the state, nor to persons injured while they are so engaged. In the instant case, there is no contention that Williams was engaged in interstate commerce

at any time so as to entitle him to come within the exception. Section 44-506 further provides the act shall apply to injuries sustained outside the state where the contract of employment was made within the state, unless such contract of employment otherwise specifically provides. Section 44-507 provides that the act shall apply to mines, without regard to number of workmen. In reading the three mentioned provisions, the statute is clear that the legislature intended an employer operating and doing business within the State should be liable under the compensation act for injuries sustained by his employee while engaged in the course of his business, whether the contract of employment was made within or without the State, so long as such employer had more than five men employed within the State continuously for more than one month. However, when engaged in the mining business, the Act applied without regard to the number.

The rule is stated in 58 Am. Jur. 625, § 69, that in the case of an injury occurring in the State of the forum, the local compensation act is usually applied, notwithstanding the contract of employment may have been made outside the State, unless such application is excluded by express statutory provision or by the terms of the contract of employment. We have been cited to no such prohibition in our statute, and our limited search has revealed none. It is also stated in 2 Larson's Workmen's Compensation Law, 375, § 87.00:

"Occurrence of the injury within the state is usually, in itself, sufficient ground for applying the local statute, . . ."

(See, also, the same volume, p. 368, § 86.10.)

Section 44-506 has application to injuries sustained outside the State, and in no sense excludes our courts from taking jurisdiction where the injury has occurred within this State.

In the instant case, the work performed by Williams and claimant was an integral part of the mining business in Kansas. The record reveals that for a number of years, Williams had been doing assaying for the Lead Company and, as such, had been engaged in the mining business in this State. The claimant had been performing his work for Williams and the Lead Company for a number of years. Neither the work of Williams nor the claimant was temporary or transitory. It is apparent from an analysis of the mentioned statute, both the Commissioner and the district court had jurisdiction to hear and determine the rights of the parties in the compensation claim.

Claimant's cross-appeal in his action to recover compensation against Williams, his immediate employer, is predicated on the contention he had a right to join the Lead Company as an additional respondent and recover an award against both the subcontractor and principal, and that the trial court erred in disallowing compensation as against the Lead Company. In dealing with this contention, we turn to G. S. 1949, 44-503, which statute governs claimant's right against the principal and subcontractor. The pertinent part of the statute reads:

"(*a*) Where any person (in this section referred to as principal) undertakes to execute any work which is a part of his trade or business or which he has contracted to perform and contracts with any other person (in this section referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under this act which he would have been liable to pay if that workman had been immediately employed by him; and where compensation is claimed from or proceedings are taken against the principal, then in the application of this act, references to the principal shall be substituted for references to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he is immediately employed. (*b*) Where the principal is liable to pay compensation under this section, he shall be entitled to indemnity from any person who would have been liable to pay compensation to the workman independently of this section, and shall have a cause of action therefor. (*c*) Nothing in this section shall be construed as preventing a workman from recovering compensation under this act from the contractor instead of the principal. . . . (*e*) A principal contractor, when sued by a workman of a subcontractor, shall have the right to implead the subcontractor. (*f*) The principal contractor who pays compensation to a workman of a subcontractor shall have the right to. recover over against the subcontractor."

The purpose of the statute was to prevent an individual from contracting to another a portion of his business operation, and thus avoid liability for compensation to a workman injured in the performance of duties under the contract, when no recovery could be had from the subcontractor or its insurance carrier, because they are financially unable to pay the compensation award. The statute is primarily for the protection of the injured workman, but it does not follow that recovery may be had against both the subcontractor and principal in the same action. The statute provides, in substance, that the principal shall be liable to pay compensation to any injured workman of his subcontractor to the same extent as though the workman had been immediately employed by him. The

purpose of the section is to give the workman a remedy against the principal. (*Lessley v. Kansas Power & Light Co.*, 171 Kan. 197, 203, 204, 231 P. 2d 239.) The workman may bring his action directly against his principal. However, when he does so, the principal may interplead the subcontractor in order to determine the extent of workman's injuries and the amount of compensation due. If he does not interplead the subcontractor, and the award is made against the principal, he may recover over against the subcontractor the amount of all sums paid the workman by reason of the award or prior payments of compensation.

Subsection (*c*) of the Act specifically provides that the workman shall not be prevented from recovering compensation against his immediate employer (the subcontractor) *instead* of the principal. In the event the workman's action is brought against his immediate employer (as in the instant case), there is no provision in the mentioned statute giving him the right to interplead the principal. The very wording of the section seems to indicate there can be only one proceeding and one judgment.

When a workman elects to bring his action against the principal, the principal is primarily liable for the payment of compensation award. If the workman brings his action against his immediate employer, the subcontractor, and recovers an award, the subcontractor is primarily liable, and contingent liability is upon the principal, should the subcontractor or his insurance carrier be unable to respond and pay the award, assuming the workman complies with the provisions of G. S. 1949, 44-520a.

In *Williams v. Cities Service Gas Co.*, 139 Kan. 166, 30 P. 2d 97, the workman commenced his action against the contractor and its insurance carrier and obtained an award. The insurance carrier paid the compensation awarded for 140 weeks, then went into the hands of a receiver. The contractor was also insolvent and unable to pay the award or reimburse the principal. An action was then brought against the principal. We held, notice of demand for compensation had been made against the principal within the statutory period, and that the principal was not relieved from liability by being omitted as a respondent in the original proceeding. To the same effect is *Pribbenow v. Meeker*, 139 Kan. 325, 31 P. 2d 15.

Inasmuch as the claimant commenced his action against his immediate employer, the subcontractor, to determine the extent of

his injuries and the amount of compensation due him, the Lead Company was neither a necessary nor proper party respondent in that action, and the trial court did not err in refusing to render judgment against the Lead Company.

In view of what has been said, the judgment of the trial court is affirmed.

It is so ordered.