No. 65,312

WORKERS COMPENSATION FUND, *Appellant,* v. SILICONE DISTRIB-
UTING, INC., OSBORNE CONSTRUCTION COMPANY, HOUSTON
GENERAL INSURANCE COMPANY, CNA INSURANCE COMPANY,
and CHONG SUN NEDZIA, *Appellees.*

(809 P.2d 1199)

Opinion filed
April 12, 1991.

*Anne L. Baker,* of Davis, Wright, Unrein, Hummer & McCallister, of
Topeka, argued the cause, and *Michael J. Unrein,* of the same firm, was
with her on the briefs for appellant.

*John David Jurcyk, Jr.,* of McAnany, Van Cleave & Phillips, P.A., of
Lenexa, argued the cause, and *Douglas M. Greenwald,* of the same firm,

was with him on the brief for appellees Osborne Construction Company and CNA Insurance Company.

*Steven Hornbaker,* of Harper, Hornbaker & Altenhofen, Chartered, of Junction City, argued the cause and was on the brief for appellee Chong Sun Nedzia.

The opinion of the court was delivered by

SIX, J.: This first impression workers compensation case examines the interrelationship of K.S.A. 44-532a and K.S.A. 44-503. The examination requires discussion and resolution of questions relating to the liability of the Workers Compensation Fund (the Fund).

The Fund appeals the district court's affirmance of the Workers Compensation Director's review awarding workers compensation benefits to the claimant, Chong Sun Nedzia. The district court held that the Fund is liable for the claimant's award under K.S.A. 44-532a. We affirm.

Our jurisdiction arises from K.S.A. 20-3017. We granted the Fund's motion to transfer the appeal from the Court of Appeals to this court.

### Facts

The district court adopted 32 numbered statements of fact submitted by the Fund and 10 statements of fact stipulated to by all parties. A summary of the uncontroverted facts follows.

On March 3, 1986, claimant Nedzia was injured in the course of her employment with Silicone Distributing, Inc. (Silicone). Silicone had contracted with the Osborne Construction Company (Osborne) to perform a portion of the cleaning and repair of buildings at Fort Riley that Osborne was obligated to perform under a government contract. When the government contract was initially awarded, Osborne intended to perform all required work. However, Osborne decided to subcontract the job to Silicone because Silicone had originally bid the job at a price considerably lower than had Osborne. Osborne's purpose in subcontracting with Silicone was to allow Osborne to realize a profit on the work. Silicone had not been awarded the government contract because it was unable to provide a bond.

Under the terms of the government contract, Osborne was required to provide a certificate of workers compensation insur-

ance evidencing that Silicone, as a subcontractor, had the required coverage. A certificate showing Houston General Insurance Company (Houston General) as Silicone's carrier was furnished to the government by Osborne. It is undisputed that Silicone was not insured by Houston General or any other insurer at the time of Nedzia's injury.

Nedzia filed a timely claim for workers compensation benefits, naming as respondents her immediate employer, Silicone, and its purported insurance carrier, Houston General. Shortly thereafter, Nedzia impleaded the Fund because she believed Silicone might be uninsured or insolvent. Nedzia later, under K.S.A. 44-503, named a potential statutory employer, Osborne, and its insurance carrier, CNA Insurance Company (CNA), as additional respondents. (K.S.A. 44-503 refers to "principal." The terms "statutory employer" and "principal" have been used in our opinions. The terms refer to the same employer.)

In August 1987, Osborne moved for dismissal on the grounds that a claimant may not proceed against both the claimant's immediate employer and the claimant's statutory employer, citing *Coble v. Williams*, 177 Kan. 743, 282 P.2d 425 (1955). In response to Osborne's motion, Nedzia moved to dismiss Osborne and CNA without prejudice. Nedzia's motion was granted in September 1987.

Between September 1987 and the date the Fund filed its petition for judicial review in the district court, neither Osborne nor CNA were parties to this proceeding.

The administrative law judge (ALJ) awarded Nedzia workers compensation benefits to be paid by Silicone. Silicone did not participate in the proceedings. The ALJ found that attempts to include Silicone and recover payment appeared to be unsuccessful and that Silicone had no insurance. Because Osborne had been dismissed, the ALJ was unable to enter an award against Osborne. The ALJ dismissed the Fund and indicated that Nedzia should pursue Osborne under K.S.A. 44-503.

Nedzia filed a motion to reinstate Osborne and CNA as parties. She also filed an application for the Director's review of the ALJ's decision. Osborne and CNA opposed the reinstatement motion, in part, on the basis that it was not timely. Nedzia's motion to reinstate Osborne and CNA has never been decided.

The Director ruled in his February 1990 order as follows: (1) The amount of the award is increased to correspond to an 87% permanent partial general bodily disability from a 75% permanent partial general bodily disability, and (2) the Fund is liable for the award under K.S.A. 44-532a.

The decision on Fund liability, which is challenged in the district court and here on appeal, was premised on the fact that Silicone did not appear at any of the compensation claim proceedings. Fund liability also was based on the ALJ's finding ("supported by the evidentiary record" and affirmed by the Director) that Silicone had no insurance coverage on the date of the accident.

The Director noted that, originally, Nedzia had named Osborne and CNA as respondents, but that "[p]ursuant to case law construing K.S.A. 44-503, the claimant chose to dismiss without prejudice the principal and proceed against the subcontractor, Silicone Distributing, Inc. and Houston General Insurance Company." The Director then cited and applied K.S.A. 44-532a, finding that Silicone was an employer without insurance who could not be located and required to pay compensation.

The Fund contended that a claim against it can only be made after the injured worker has made a claim against a principal under K.S.A. 44-503 *and* after that principal (or principal's insurance carrier) has been found to be unable to pay the award.

The Director responded that "[t]he answer to the contentions of the Workers' Compensation Fund is that K.S.A. 44-532a makes no additional reference to inability of the principal to pay the award." In the Director's analysis, K.S.A. 44-503 provides that the claimant may proceed directly against the principal if the claimant was injured while working for a subcontractor but, upon initiation of a compensation claim against the subcontractor, "the principal is no longer a party to the action." According to the Director, it is "only when the action is directly instituted against the principal that the statutory language referred to by the Workers' Compensation Fund that 'references to the principal shall be substituted for references to the employer' applies."

The Fund petitioned the district court for judicial review of the Director's order. In its petition, the Fund purported to name Osborne and CNA as parties even though they had been dis-

missed on the motion of claimant approximately 2½ years earlier. The issues raised by the petition for judicial review were briefed by all named parties (including Osborne and CNA).

The district court affirmed the Director's order in all respects. The district court concluded initially "that there is insufficient evidence in the record clearly whether or not Osborne was a statutory employer." The district court rejected the Fund's contention that pursuit of a claim against Osborne (as a potential statutory employer) was a prerequisite for Fund liability under K.S.A. 44-532a.

We granted Houston General's motion to be dismissed from this appeal because the ALJ, the Director, and the district court all found that Silicone was not insured by Houston General. The Fund is not challenging the finding of Silicone's lack of insurance.

### The District Court's View

The district court reasoned that workers compensation statutory provisions are to be construed liberally in favor of the claimant. Nedzia elected to proceed against Silicone and its insurance carrier and to dismiss the alleged statutory employer. The district court pointed out that this election was mandated by *Coble v. Williams,* 177 Kan. 743, and that K.S.A. 44-532a does not purport to overrule *Coble.* (We shall address the relationship of *Coble* and K.S.A. 44-532a in due course.)

The district court noted that Nedzia had waited almost four years to be compensated for her injuries. The primary purpose of the Workers Compensation Act is to expeditiously provide an award of compensation in favor of an injured employee. *Hobelman v. Krebs Construction Co.,* 188 Kan. 825, Syl. ¶ 5, 366 P.2d 270 (1961). K.S.A. 44-532a requires only that an *employer* of the claimant either have no insurance coverage *or* be incapable of being located and required to pay compensation. Further, K.S.A. 44-532a does not condition the worker's claim against the Fund on an exhaustion of all other remedies that the claimant might have against others.

### The Interplay of K.S.A. 44-503 and K.S.A. 44-532a

The scope of review by the district court in a workers compensation case is by trial de novo on the record. The district court hears no new evidence, but makes an independent adjudication of the facts and law based upon the record developed before the Director of Workers Compensation. *Reeves v. Equipment Service Industries,*

*Inc.,* 245 Kan. 165, 176, 777 P.2d 765 (1989). We may substitute our judgment on questions of law. On disputed issues of fact, we view the evidence in the light most favorable to the prevailing party and determine whether there is substantial competent evidence to support the district court. 245 Kan. at 173.

The interplay of K.S.A. 44-532a and K.S.A. 44-503, an issue of first impression, requires us to construe the statutes concerning liability of the Fund when an employer is either uninsured and insolvent or cannot be located and required to pay compensation.

In construing statutes, the legislative intent is to be determined from a general consideration of the entire act. It is our duty, as far as is practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. *State v. Adee,* 241 Kan. 825, 829, 740 P.2d 611 (1987). In determining legislative intent, we are not limited to consideration of the language used in the statute. We may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. *Citizens State Bank of Grainfield v. Kaiser,* 12 Kan. App. 2d 530, 536, 750 P.2d 422, *rev. denied* 243 Kan. 777 (1988).

The Fund argues that the district court erroneously construed K.S.A. 44-532a by holding the Fund liable when Nedzia had not exhausted her claim against Osborne as a statutory employer under K.S.A. 44-503(a). In support of this argument, the Fund contends that the historical background of the Kansas Workers Compensation Act (K.S.A. 44-501 *et seq.*) (the Act) evidences the intent of the Kansas Legislature that the Fund should be liable only as a party of last resort. We agree, in part, with the Fund's legislative intent analysis.

Because the district court found that there was insufficient evidence to determine whether Osborne was a statutory employer, Nedzia asserts the issue is moot. Addressing the merits, Nedzia argues that the Act contains no requirement that a claimant must exhaust remedies against a statutory employer before attempting to seek liability from the Fund under K.S.A. 44-532a. Osborne and CNA join in Nedzia's argument on the merits, asserting that the plain language of K.S.A. 44-532a contains no administrative exhaustion requirement. Nedzia, Osborne, and CNA contend, under *Coble,* a claimant may not join his/her immediate employer and all potential

statutory employers in one proceeding. They argue that requiring a claimant to exhaust remedies against all potential statutory employers is inconsistent with the purpose of the Act which is to *expeditiously* provide compensation to injured workers. We recognize the logic of their argument. We also recognize the dilemma placed before the district court by the instant factual situation.

K.S.A. 44-532a states:

"**Liability of workers' compensation fund for uninsured insolvent employers; cause of action against such employers.** (a) If *an employer* has no insurance to secure the payment of compensation as provided in subsection (b)(1) of K.S.A. 44-532 and amendments thereto, and such employer is financially unable to pay compensation to an injured worker as required by the workmen's compensation act, or such employer cannot be located and required to pay such compensation, the injured worker may apply to the director for an award of the compensation benefits, including medical compensation, to which such injured worker is entitled, to be paid from the workers' compensation fund. If the director is satisfied as to the existence of the conditions prescribed by this section, the director may make an award, or modify an existing award, and prescribe the payments to be made from the workers' compensation fund as provided in K.S.A. 44-569 and amendments thereto. The award shall be certified to the commissioner of insurance, and upon receipt thereof, the commissioner of insurance shall cause payment to be made to the employee in accordance therewith.

"(b) The commissioner of insurance, acting as administrator of the workers' compensation fund, shall have a cause of action against *the employer* for recovery of any amounts paid from the workers' compensation fund pursuant to this section. Such action shall be filed in the district court of the county in which the accident occurred or where the contract of employment was entered into." (Emphasis added.)

K.S.A. 44-503 states in part:

"**Subcontracting.** (a) Where any person (in this section referred to as principal) undertakes to execute any work which is a part of his trade or business or which he has contracted to perform and contracts with any other person (in this section referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under the workmen's compensation act which he would have been liable to pay if that workman had been immediately employed by him; and *where compensation is claimed from or proceedings are taken against the principal, then in the application of the workmen's compensation act, references to the principal shall be substituted for references to the employer,* except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he is immediately employed.

. . . . .
"(c) Nothing in this section shall be construed as preventing a workman from recovering compensation under the workmen's compensation act from the contractor instead of the principal.

. . . .
"(e) A principal contractor, when sued by a workman of a subcontractor, shall have the right to implead the subcontractor.

"(f) The principal contractor who pays compensation to a workman of a subcontractor shall have the right to recover over against the subcontractor." (Emphasis added.)

## Historical Background

The Workmen's Compensation Act of 1911 contained a provision similar to K.S.A. 44-503. L. 1911, ch. 218, § 4. See *Maughlelle v. Mining Co.*, 99 Kan. 412, 419, 161 Pac. 907 (1916). The purpose of K.S.A. 44-503 has been stated as follows:

"The purpose of the statute was to prevent an individual from contracting to another a portion of his business operation, and thus avoid liability for compensation to a workman injured in the performance of duties under the contract, when no recovery could be had from the subcontractor or its insurance carrier, because they are financially unable to pay the compensation award. The statute is primarily for the protection of the injured workman . . . . The statute provides, in substance, that the principal shall be liable to pay compensation to any injured workman of his subcontractor to the same extent as though the workman had been immediately employed by him. The purpose of this section is to give the workman a remedy against the principal." *Coble v. Williams*, 177 Kan. 743, 750-51, 282 P.2d 425 (1955).

K.S.A. 44-532a was enacted in 1974. L. 1974, ch. 203, § 32.

The Fund also was established in 1974. L. 1974, ch. 203, § 46, codified at K.S.A. 44-566a. The Fund was made liable for three classifications of payments: (1) awards to handicapped employees; (2) benefits to an employee who is unable to recover benefits from such employee's employer under K.S.A. 44-532a (the instant situation); and (3) reimbursement of employers or insurance carriers for preliminary awards later found to have been unwarranted. K.S.A. 44-566a(e).

The 1974 session of the Kansas Legislature substantially altered the Act. The 1974 legislation was influenced by federal interest in workers compensation. Wright and Rankin, *Potential Federalization of State Workmen's Compensation Laws—The Kansas Response*, 15 Washburn L.J. 244 (1976). See Proposal No. 3— Review of Workmen's Compensation Laws, Report on Kansas

Legislative Interim Studies to the 1974 Legislature (November 1973) and Kansas Workers Compensation Handbook § 1.02 (3d ed. 1990).

A report by the National Commission on State Workmen's Compensation Laws recommended that the states establish procedures "to provide benefits to employees whose benefits are endangered because of an insolvent carrier or employer, or because an employer fails to comply with the law mandating the purchase of workmen's compensation insurance." Minutes of the Senate Committee on Public Health and Welfare, 1974 Kansas Legislature, February 14, 1974, attachment B.

The Fund is financed by appropriation from the State's general fund and from an annual assessment imposed by the Commissioner of Insurance against all insurance carriers and self-insurers. K.S.A. 44-566a(b)(1) and (2).

Prior to the 1974 amendments, the procedures for enforcing the liability of a statutory employer were well established. Under G.S. 1949, 44-503(a), a claimant could proceed against either the principal (statutory employer) or the contractor (immediate employer). The claimant could not join both the contractor and the principal in the same proceeding. If the action was brought against the contractor and an award was entered, the contractor was primarily liable. The principal was contingently liable, and, if the contractor should be unable to respond and pay the award, the claimant was entitled to payment by the principal. *Coble*, 177 Kan. at 751.

Where an award was entered against a contractor and, after 140 weeks of payments, the contractor and his insurance carrier became insolvent, the principal was held to be liable for the award. *Williams v. Cities Service Gas Co.*, 139 Kan. 166, 170, 30 P.2d 97 (1934).

### Construing K.S.A. 44-532a

The Fund reasons that K.S.A. 44-532a was not meant to supplant the prior compensation procedure. K.S.A. 44-532a, according to the Fund's assertion, provides a "safety net" after a claimant's remedies against all potential statutory employers have been exhausted.

The district court found and Osborne, CNA, and Nedzia argue that K.S.A. 44-532a provides Nedzia with *another option*. Instead of having to make a claim against another potential employer, the claimant is allowed to implead the Fund and secure an order to direct the Fund to pay the benefits. We agree with this option analysis.

The historical background, legislative history and language of the statute are inconclusive; however, we recognize a degree of merit in the Fund's "safety net" metaphor. The burden of exhausting remedies against all potential employers is not to be carried by the claimant alone. The claimant need only elect to assert a compensation claim against either the immediate or the statutory employer, as was done by Nedzia. If the employer from which compensation is sought is insolvent or cannot be located, the Fund may be impleaded. If the Fund pays on a claim, it may assert a K.S.A. 44-532a(b) cause of action against either the insolvent or unlocated employer, or the solvent statutory employer (principal), or both. However, the Fund may receive only one recovery.

K.S.A. 44-503(a) states in part: "[W]here compensation is claimed from or proceedings are taken against the principal, then in the application of the workmen's compensation act, references to the principal shall be substituted for references to the employer." Therefore, "an employer" in K.S.A. 44-532a would refer to "a principal" where compensation is claimed from or proceedings are taken against the principal.

In the case at bar, Nedzia named Osborne and CNA as respondents and later dismissed them. Osborne and CNA contend compensation is not claimed from and proceedings are not being taken against them; consequently, "principal" should not be substituted for "employer" in K.S.A. 44-532a.

The Fund argues that "employer" in K.S.A. 44-532a(a) and (b) must refer to the same entity. If "employer" in K.S.A. 44-532a(a) does not refer to a principal, then "employer" in K.S.A. 44-532a(b) cannot refer to a principal. Therefore, the Fund may not recover against the principal once it has paid the claimant. The Fund observes that the principal escapes liability contrary to the intent and purpose of K.S.A. 44-503 yet still enjoys immunity from common-law actions under K.S.A. 44-501(b).

We question the Fund's argument. Once the Fund files a K.S.A. 44-532a(b) cause of action against the alleged principal, the references to "employer" in K.S.A. 44-532a may be substituted with references to "principal." K.S.A. 44-503(a).

The Act does not provide a mechanism for the Fund to implead the principal of the immediate employer. K.S.A. 44-532a(b) specifically provides that the Fund's action against the employer shall be filed in the district court. If the Fund is liable as a result of an immediate employer's failure to pay, it may assert a cause of action against the principal in a separate action under K.S.A. 44-532a(b).

We interpret the interrelationship of K.S.A. 44-532a and K.S.A. 44-503 to permit the Fund to utilize K.S.A. 44-532a(b) to assert any statutory cause of action it deems it may have against Osborne as a result of payment of compensation benefits.

In the case at bar, the district court found that Nedzia had suffered an inordinate wait because she had been without compensation for a good portion of the four years between the date of her injury (March 3, 1986) and the date the district court rendered its decision (June 1, 1990).

In Nedzia's situation, there was only one potential principal (Osborne); however, it is possible to have more than one potential principal. See *Quigley v. General Motors Corp.*, 660 F. Supp. 499 (D. Kan. 1987) (two statutory employers were named). If we were to adopt the Fund's argument, absent the claimant's ability to join all of the potential statutory employers in the proceeding, the claimant could be required to pursue one potential statutory employer after another. Such a situation could conceivably prolong the claimant's wait for compensation. This is contrary to the policy and purpose of the Act.

Osborne, relying on *Coble,* initiated its and CNA's dismissal from the proceedings by filing a motion for dismissal. *Coble* was filed in 1955. Osborne's rationale is keyed to Syl. ¶ 5 of the *Coble* opinion, which is qualified by the phrase "*[u]nder the facts as related in the opinion . . . .*" (Emphasis added.) What were the facts as to employer solvency in *Coble*? Both the immediate employer, Williams, and the statutory employer (principal), National Lead Company, were solvent and could be located. In *Coble,* we discussed G.S. 1949, 44-503, observing that the statute

was primarily for the protection of the injured worker but that it did not authorize a double recovery against both the subcontractor and principal in the same action. 177 Kan. at 750.

In the instant action, Silicone is insolvent and uninsured. Although Silcone's bid was lower than Osborne's, it was not awarded the primary contract for the repair and cleaning work at Fort Riley because it was unable to provide a bond. After Osborne was awarded the contract, it subcontracted with Silicone for the work which Osborne had submitted the higher bid to do. Osborne provided the government with the required certificate of workers compensation insurance, evidencing that Silicone had the required coverage. Silicone had no such insurance at the time of Nedzia's injury. Unlike *Coble,* there is no possibility of a double recovery in the case at bar because Silicone is insolvent and uninsured.

Under the statutory scheme existing at the time of *Coble,* the immediate employer was primarily liable, with contingent liability imposed upon the principal employer. 177 Kan. at 751.

The adoption of K.S.A. 44-532a in 1974 provides a legislative overlay to our prior case law.

We hold that Nedzia is not required to exhaust her remedies against both the subcontractor, Silicone, and the principal, or statutory employer, Osborne, before asserting her claim against the Fund. The award against the Fund is affirmed.

None of parties have questioned the propriety of the amount of the Director's award. The Fund states that there is no issue concerning Nedzia's entitlement.

Affirmed.