(899 P.2d 501)

No. 72,665

KENNETH HELMS, *Appellee,* v. PAT PENDERGAST and BILL SIXTA d/b/a PENDERGAST GROUP, *Appellees,* and KANSAS WORKERS COMPENSATION FUND, *Appellant.*

Opinion filed July 14, 1995.

*Paul K. Thoma* and *Robert D. Benham,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for the appellant.

*John G. O'Connor,* of Robb, Taylor and O'Connor, of Kansas City, for the appellee Kenneth Helms.

Before PIERRON, P.J., ELLIOTT, J., and RICHARD W. WAHL, District Judge Retired, assigned.

WAHL, J.: The Kansas Workers Compensation Fund (the Fund) appeals a Workers Compensation Board (Board) order requiring the Fund to pay the claimant's workers compensation benefits. The Fund alleges the Board was without jurisdiction to enter the order or, in the alternative, there was insufficient evidence to support the order.

On September 14, 1992, Kenneth Helms injured his foot while working for Tony Derewenko, a framing subcontractor. Derewenko had an oral agreement with Pat Pendergast and Bill Sixta of the Pendergast Group for the framing of a house.

Helms named Derewenko, Pendergast d/b/a Pendergast Group, and Sixta as employers. Alleging these employers were uninsured and might be financially unable to pay benefits, Helms impleaded the Fund.

At a hearing on January 12, 1993, Helms presented evidence to the administrative law judge (ALJ) that he had made extensive efforts to get payment from Pendergast and Sixta, including a preliminary hearing, filing a demand letter, and filing a motion for penalties. His efforts were unsuccessful.

Also at this hearing, Pendergast's attorney reported he had received the demand letter, had forwarded the letter to Pendergast, and had not heard from Pendergast since before the first preliminary hearing. Letters sent to Pendergast's last known address were unclaimed. The attorney had no information as to where Pendergast was and was later allowed to withdraw.

At this same hearing, the Fund argued that both Pendergast and Sixta were architects and had retained attorneys. Other than Pendergast's and Sixta's own statements, no documentary evidence was presented concerning the financial situation of either respondent.

Later, Helms' attorney obtained an address for Pendergast and sent a demand letter. Pendergast signed for the letter but did not appear at subsequent hearings. He did agree to be deposed on March 19, 1993, but did not retain counsel for the deposition.

During the deposition Pendergast said he had never purchased workers compensation insurance coverage. He testified his business was "designing and building some homes in the Woodsonia Subdivision." Pendergast stated he had a contract with J.C. Nichols

to build homes in that subdivision. It is unclear from the record if this was an ongoing contract.

As for his financial situation, Pendergast said he had not paid the award because he "really [did]n't have the funds." He was not in bankruptcy. Further questions directed to Pendergast concerning his assets and financial ability to pay the workers compensation benefits were unanswered, as Pendergast had previously informed the attorneys he would not answer such questions without consulting his attorney. Pendergast stated he understood Sixta was involved in a building job in Verona Hills, but did not know where to find Derewenko.

Sixta was deposed and attended the hearings. He testified he was not financially able to pay the award; however, he did make a $600 "good faith" payment. Sixta testified he was a self-employed architect and no longer affiliated with Pendergast.

Essentially, this was the extent of the evidence introduced concerning Pendergast's or Sixta's ability or inability to pay the award. Derewenko could not be found.

On January 28, 1994, the ALJ entered an award in favor of Helms in the amount of $6,787.30. The parties stipulated that Sixta, Pendergast, and the Pendergast Group were uninsured. The ALJ found that Helms was an employee of Derewenko at the time of injury; that Derewenko had a subcontracting relationship with the Pendergast Group; that Pendergast and Sixta were involved in a joint venture as the Pendergast Group at the time of Helms' injury; and that these employers would not be relieved of their duty to pay the award.

On February 4, 1994, Sixta requested the Board to review the ALJ's order, arguing that the ALJ erred in determining Helms' injury arose out of and in the course of his employment with Sixta; that Helms had not given proper notice of his injury, resulting in prejudice; that the relationship of employer and employee did not exist on the date of the injury; and that there was no competent evidence the parties were subject to the Workers Compensation Act (the Act).

On February 7, 1994, Helms filed his request for Board review. He alleged that the ALJ erred in failing to reaffirm a penalty; in

crediting the $600 paid by Sixta against the compensation rather than the penalty; and in failing to find that Sixta was financially unable to pay the compensation awarded and that Helms was entitled to an award against the Fund pursuant to K.S.A. 44-532a.

The Board reviewed the award on the same record considered by the ALJ and issued its order on September 2, 1994. It found that Pendergast and Sixta were principals and that Helms as an employee of Derewenko was entitled to receive benefits from Pendergast and Sixta. The Board also found Pendergast and Sixta were financially unable to pay the benefits to Helms and, therefore, the Fund was ordered to pay the benefits pursuant to K.S.A. 44-532a.

The Board based its findings concerning the Fund's liability on the fact that Pendergast testified he did not have the funds to pay the benefits or the medical expenses; that Pendergast refused to answer any questions concerning his assets and his ability to pay; that Sixta testified he did not know if Pendergast was financially able to pay; and that Sixta believed Pendergast was experiencing financial difficulties. The Board also noted Sixta had testified that $600 was all he could afford to pay toward the benefits. The Board found there was no evidence presented to controvert these facts.

The Board believed the evidence was more probably true than not true and that Sixta and Pendergast had insufficient cash flow to pay the benefits owed to Helms as they came due. Finding that the purpose of the Act was to expeditiously provide an award of compensation in favor of an injured employee, the Board believed the Fund was created for this type of situation. It noted that under the authority of K.S.A. 44-532a(b), the Fund could then pursue Pendergast and Sixta to recover the amount paid to Helms.

The Fund argues the Board acted beyond its scope of jurisdiction when it considered a question not posed by either of the parties requesting review. The Fund cites *Rios v. Board of Public Utilities of Kansas City*, 256 Kan. 184, 883 P.2d 1177 (1994) and *Hall v. Roadway Express, Inc.*, 19 Kan. App. 2d 935, 878 P.2d 846 (1994).

Helms argues K.S.A. 44-551(b)(1) contains no language which limits the Board's jurisdiction in such a manner. Helms contends the Board's scope of review is de novo on the record. He points

out this was the scope of review of the district court before the 1993 amendments and that the Board has an identical scope of review. Finally, Helms argues his application for review requested the Board to review the Fund's liability and, therefore, the issue was raised to the Board.

In order to answer the question posed by the Fund, we must interpret the Workers Compensation Act, K.S.A. 44-501 *et seq.* Interpretation of a statute is a question of law, giving this court unlimited review. *Hall,* 19 Kan. App. 2d at 938.

It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. In determining legislative intent, courts are not limited to consideration of the language used in the statute, but may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. The entire act must be given consideration. It is the duty of the court, as far as possible, to reconcile the different provisions to make them consistent, harmonious, and sensible. *Hall,* 19 Kan. App. 2d at 938-39.

K.S.A. 44-551(b)(1) provides:

"All acts, findings, awards, decisions, rulings or modifications of findings or awards made by an administrative law judge shall be subject to review by the board upon written request of any interested party within 10 days and if no such request is made, then the board shall approve such actions, findings, awards, decisions, rulings or modifications of findings or awards of the administrative law judge. Review by the board shall be a prerequisite to judicial review as provided for in K.S.A. 44-556 and amendments thereto. On any such review, the board shall have authority to grant or refuse compensation, or to increase or diminish any award of compensation or to remand any matter to the administrative law judge for further proceedings."

The Board was created by the legislature in 1993 under the authority of K.S.A. 44-555b. K.S.A. 44-556 provides any action of the Board pursuant to the Act shall be subject to review in accordance with the Act for Judicial Review and Civil Enforcement of Agency Actions by appeal directly to the Court of Appeals. Such review shall be upon questions of law.

The Fund asserts that the holding in *Hall* supports its arguments. In *Hall*, the claimant had not requested a review by the Board. Absent such a request, the Board had issued its "rubber-stamp" approval of the ALJ's order. Hall then filed a notice of appeal with the appellate court. The *Hall* court was asked to reconcile an apparent conflict between K.S.A. 44-551, which states there can be no judicial review by the court without review by the Board, and K.S.A. 44-556, which states the Board can conduct a review only when requested to do so by one of the parties. 19 Kan. App. 2d at 938.

In construing these statutes, the court in *Hall* found "[i]n general, the changes to the workers compensation code were designed to shift the de novo review of the district court to the newly created Workers Compensation Board of Appeals." 19 Kan. App. 2d at 939. The court further noted that, when it amended K.S.A. 44-551, the legislature removed the language that director's review was not a prerequisite to judicial review and substituted a provision making board review a prerequisite to judicial review. 19 Kan. App. 2d at 942. "Review by the Board is clearly designed to replace the review by the district court under the law as it existed prior to July 1, 1993." 19 Kan. App. 2d at 942. In *Hall*, the court held judicial review by the Court of Appeals may be sought only after the Board has reviewed the decision of the ALJ pursuant to a written request under K.S.A. 44-551. *Hall* was approved by the Kansas Supreme Court in *Rios*, 256 Kan. at 192.

In this case, the Fund argues the Board cannot exercise its discretion or provide de novo review of the ALJ's decision unless specifically requested by a party. The Fund surmises that because no party asked the Board to review whether Pendergast was financially unable to pay Helms' compensation, the ALJ's findings, as they relate to Pendergast, were not subject to review by the Board. Hence, the Fund concludes, when the Board ordered the Fund to be liable, the Board exceeded its jurisdiction.

The Fund reads *Hall* too broadly. *Hall* specifically noted the Board's review was meant to replace that provided by the district court prior to the 1993 amendments. Prior to 1993, the scope of review of the district court in a workers compensation case was

trial de novo on the record. *Workers Compensation Fund v. Silicone Distributing, Inc.*, 248 Kan. 551, 555, 809 P.2d 1199 (1991). Under the prior law the district court heard no new evidence, but made an independent adjudication of the facts and law based upon the record developed before the Director of Workers Compensation. 248 Kan. at 555 (citing *Reeves v. Equipment Service Industries, Inc.*, 245 Kan. 165, 176, 777 P.2d 765 [1989]). The district court had jurisdiction to increase the claimant's award even though the claimant himself did not appeal the award. *Boeing Military Airplace Co. v. Enloe*, 13 Kan. App. 2d 128, 132, 764 P.2d 462 (1988), *rev. denied* 244 Kan. 736 (1989). See also Kansas Workers Compensation Handbook § 14.09 (1990) (district court has authority to make totally new and independent findings of fact and conclusions of law, either for or against the appealing party).

Under the facts before us, the Board received applications requesting review from both Helms and Sixta. The Board was within its jurisdiction to review the ALJ's order de novo on the record. Furthermore, Sixta's final question in his application for review raised the question of the Fund's liability. The issue was properly before the Board for review.

The Fund next argues that the Board's finding that Sixta and Pendergast were financially unable to pay compensation benefits was not supported by substantial evidence and must be reversed.

Helms contends that a finding of Fund liability could be based on two theories under K.S.A. 44-532(a). Fund liability can be imposed if it is determined the employer was both uninsured and unable to pay, or liability may be imposed if it is determined the employer cannot be located and required to pay. Even if the Board's decision may have been based on the wrong grounds, Helms argues the appellate court must uphold it under *Admire Bank & Trust v. City of Emporia*, 250 Kan. 688, Syl. ¶ 2, 829 P.2d 578 (1992). Under either theory, Helms contends there was substantial competent evidence supporting the Board's order requiring Fund liability for the compensation benefits.

In a workers compensation appeal, the appellate court may substitute its judgment on questions of law. On disputed issues of fact, the appellate court must view the evidence in the light most fa-

vorable to the prevailing party and determine whether there is substantial competent evidence to support the findings of the district court. *Elder v. Arma Mobile Transit Co.*, 253 Kan. 824, Syl. ¶ 2, 861 P.2d 822 (1993); K.S.A. 44-556(a); K.S.A. 77-621(c)(7); K.S.A. 77-623. Under the 1993 amendments, by virtue of the fact that Board review has been substituted for the district court's review, the appellate court must now determine whether there is substantial competent evidence supporting the Board's findings rather than the district court's findings. See also *Streff v. Goodyear Tire & Rubber Co.*, 211 Kan. 898, 902, 508 P.2d 495 (1973) (whether there is substantial competent evidence in the record to support the trial court's judgment is a question of law).

Findings supported by substantial competent evidence will be upheld by the appellate court even though there is evidence of record which would have supported contrary findings. *Elder*, 253 Kan. at 826. Substantial evidence in the context of workers compensation cases means " ' "evidence possessing something of substance and relevant consequence and carrying with it fitness to induce conviction that the award is proper, or furnishing substantial basis of fact from which the issue tendered can be reasonably resolved." [Citation omitted].' " *Wardlow v. ANR Freight Systems*, 19 Kan. App. 2d 110, 114, 872 P.2d 299 (1993) (quoting *Angleton v. Starkan, Inc.*, 250 Kan. 711, 716, 828 P.2d 933 [1992]).

K.S.A. 44-532a(a) provides:

"If an employer has no insurance to secure the payment of compensation, as provided in subsection (b)(1) of K.S.A. 44-532 and amendments thereto, and such employer is financially unable to pay compensation to an injured worker as required by the workers compensation act, or such employer cannot be located and required to pay such compensation, the injured worker may apply to the director for an award of the compensation benefits, including medical compensation, to which such injured worker is entitled, to be paid from the workers compensation fund. Whenever a worker files an application under this section, the matter shall be assigned to an administrative law judge for hearing. If the administrative law judge is satisfied as to the existence of the conditions prescribed by this section, the administrative law judge may make an award, or modify an existing award, and prescribe the payments to be made from the workers compensation fund as provided in K.S.A. 44-569 and amendments thereto."

Apart from the fact that in 1993 the legislature added the requirement that a hearing be held when the Fund has been impleaded,

K.S.A. 44-532a is substantially the same as it was before the 1993 amendments.

The question in this case distills to how much evidence of an employer's inability to pay must the Board have before ordering the Fund to pay the benefits. The Fund also questioned who had the burden to provide that evidence.

In *Silicone*, 248 Kan. 551, the court considered the interrelationship of K.S.A. 44-532a and K.S.A. 1994 Supp. 44-503. The claimant, Nedzia, worked for Silicone, a company which was originally denied a government project bid because it was unbonded. Later, Osburne, another construction company which won the bid, subcontracted the work to Silicone and gave the government a certificate showing that Silicone was covered by workers compensation insurance. In fact, Silicone had no coverage at the time of Nedzia's injury. 248 Kan. at 552-53.

Nedzia filed a claim for workers compensation insurance, naming Silicone and its purported insurance company. Later, Nedzia named Osburne, his potential statutory employer under K.S.A. 1994 Supp. 44-503, and Osburne's insurance carrier. The ALJ awarded Nedzia benefits and ordered Silicone to pay. Silicone did not participate in any of the proceedings and attempts to include Silicone were unsuccessful. The ALJ had also determined that Silicone was uninsured. Earlier, Osburne and its insurance carrier had been dismissed as parties because Osburne had argued, pursuant to case law construing K.S.A. 1994 Supp. 44-503, a claimant cannot proceed against an immediate employer and a statutory employer. In its order, the ALJ directed Nedzia to pursue Osburne as a principal under K.S.A. 1994 Supp. 44-503. 248 Kan. at 553-54.

On review, the Workers Compensation Director ordered, *inter alia*, that the Fund be liable for the award under K.S.A. 44-532a. Fund liability was premised on the fact that Silicone had not appeared at any of the proceedings and was uninsured. The district court affirmed the Director's decision. 248 Kan. at 554-55.

On appeal, the Fund argued it could only be liable after the injured worker had made a claim against a principal under K.S.A. 1994 Supp. 44-503 and after the principal or its insurance carrier

had been found to be unable to pay the award. The Fund argued the legislature had intended the Workers Compensation Fund to be liable only as a party of last resort. Nedzia argued that requiring the claimant to exhaust all remedies against all potential statutory employers is inconsistent with the purpose of the Act to expeditiously provide compensation to injured workers. 248 Kan. at 556-57.

The court discussed the historical background of the Act and the establishment of the Fund. It noted the Fund was established in 1974 and was made liable to three classifications of payments: (1) awards to handicapped employees; (2) benefits to an employee who is unable to recover benefits from such employee's employer under K.S.A. 44-532a; and (3) reimbursement of employers or insurance carriers for preliminary awards later found to have been unwarranted. 248 Kan. at 558 (citing K.S.A. 44-566a[e]).

Prior to the creation of the Fund, a claimant proceeded against either the statutory employer or the immediate employer, but not both. If the party proceeded against became insolvent, the other party became responsible. In *Silicone*, Nedzia argued that K.S.A. 44-532a provided another option. Under this option, the claimant could implead the Fund and secure an order directing the Fund to pay the benefits. The court agreed. The burden of exhausting remedies against all potential employers is not to be carried by the claimant alone. If the employer from which compensation is sought is "insolvent or cannot be located," the Fund may be impleaded. 248 Kan. at 560. The Fund may then assert a K.S.A. 44-532a(b) cause of action against either the insolvent or unlocated employer, the solvent statutory employer, or both. The court reasoned that to adopt the Fund's argument would mean the claimant could be required to pursue one potential statutory employer after another. Such a situation, the court noted, would prolong the claimant's wait for compensation and lead to a situation which would be contrary to the policy and purpose of the Act. The award against the Fund was affirmed. 248 Kan. at 560-62.

Although the facts of *Silicone* are different from the facts before us in this case, the rationale is relevant. Helms had several potential employers which had been joined in the action. Sixta had paid only

$600, and neither Pendergast nor Derewenko had appeared at the proceedings. Sixta testified he could not make further payments, while Pendergast testified he was unable to pay any benefits.

As was found in *Silicone*, it would be unreasonable to expect Helms to proceed against all of these potential employers, thus prolonging his wait for compensation. This would be contrary to the policy and purpose of the Act.

As to the Fund's question concerning who has the burden of proving inability to pay, the Fund argues that either Helms or Sixta and Pendergast had the burden of proving they were uninsured and were financially unable to pay. The Fund cites K.S.A. 44-501 and *Denton v. Sunflower Electric Co-op*, 12 Kan. App. 2d 262, 264, 740 P.2d 98 (1987), *aff'd* 242 Kan. 430, 748 P.2d 420 (1988), in support of this argument. K.S.A. 44-501(a) states:

> "If in any employment to which the workers compensation act applies, personal injury by accident arising out of and in the course of employment is caused to an employee, the employer shall be liable to pay compensation to the employee in accordance with the provisions of the workers compensation act. In proceedings under the workers compensation act, the burden of proof shall be on the claimant to establish the claimant's right to an award of compensation and to prove the various conditions on which the claimant's right depends. In determining whether the claimant has satisfied this burden of proof, the trier of fact shall consider the whole record."

Cases discussing the burden of proof generally address whether the claimant provided proof of causation or proof that the accident arose out of and in the course of employment. See *Transmeier v. Blaw-Knox Construction Co.*, 191 Kan. 321, 323, 380 P.2d 322 (1963); *Rorabaugh v. General Mills*, 187 Kan. 363, 367, 356 P.2d 796 (1960); *McMillan v. Kansas Power & Light Co.*, 157 Kan. 385, Syl. ¶ 1, 139 P.2d 854 (1943). We have been cited to no cases specifically requiring the claimant to prove the employer to be unable to pay benefits. We read *Silicone* as supporting the position that the claimant does not bear that burden.

*Denton*, 12 Kan. App. 2d 262, is distinguishable. There, the Fund argued the employer had failed to prove it knew of the employee's handicap before the employee was hired. *Denton* construed the language of K.S.A. 44-567(b), which specifically states

that in order to be relieved of liability, the employer must prove it retained the handicapped employee after having knowledge of that employee's handicap. 12 Kan. App. 2d at 263-64. That statute is not applicable to the facts of this case.

The real question before this court is whether the Board's decision is supported by substantial evidence. On appeal, the facts must be viewed in the light most favorable to the prevailing party below. Although there is some evidence to the contrary, there is substantial evidence that neither Pendergast nor Sixta were able to pay the benefits. Helms had sent demand letters, asked for and obtained penalties, and generally pursued the respondents for payment. If the Fund believes that Pendergast and Sixta are able to pay the benefits, it may assert a cause of action to recover the amount of the benefits from either or both of these parties. The Board's decision is also compatible with the Act's purpose of expeditiously compensating injured workers.

Affirmed.