No. 88,980

DAISY DUARTE, *et al.*, *Appellees*, v. DEBRUCE GRAIN, INC., INDUSTRIAL MAINTENANCE, INC., and RANGER INSURANCE CO., *Defendants*, and LIBERTY MUTUAL INSURANCE, *Intervenor/Appellant*, and TRAVELERS INSURANCE COMPANY, *Intervenor*.

(78 P.3d 428)

Opinion filed October 31, 2003.

*Douglas D. Johnson*, of Johnson, Kennedy, Dahl & Willis, of Wichita, argued the cause, and was on the briefs for appellant.

*Donald A. McKinney*, of Wichita, argued the cause, and *Nicholas S. Daily*, of Wichita, *Randall K. Rathbun*, of Depew and Gillen, L.L.C., of Wichita, and *Tony L. Atterbury*, of the same firm, appeared on the brief for appellee Carlos Amador.

*Michael L. Snider*, of Snider & Seiwert, LLC, of Wichita, and *J. Joseph Seiwert*, of the same firm, appeared on the brief for appellees Darryl Williams, Miguel Rios, Saul Ortiz, Rolando Najera, and Gloria Rosas.

*Gerard C. Scott*, of Prochaska, Scott & Craig, of Wichita, appeared on the brief for appellees Maria Castaneda, Valeria Castaneda, and Jose Alfredo Castaneda.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is an interlocutory appeal by Liberty Mutual Insurance Company (Liberty), an intervenor, from the district

court's order in favor of plaintiffs on plaintiffs' and Liberty's cross-motions for partial summary judgment. Plaintiffs (LSI workers) are workers who were injured and the heirs of workers who were killed in a June 1998 explosion at the DeBruce Grain, Inc. (DeBruce), grain elevator in Sedgwick County, Kansas. Defendants are Industrial Maintenance, Inc., (Industrial Maintenance) which was hired by DeBruce to perform maintenance on the dust collection and suppression systems at the grain elevator where the explosion occurred, and Ranger Insurance Company (Ranger Insurance).

Some of the plaintiffs were temporary employees furnished to DeBruce by LSI Corp. (LSI), a temporary employment agency. Liberty, the workers compensation carrier for LSI, paid workers compensation benefits to and on behalf of the LSI workers. Liberty was allowed to intervene in this case in support of its subrogation liens against any civil recoveries of the LSI workers.

Summary judgment was entered in favor of DeBruce on the ground that, as a statutory employer, it was entitled to immunity from civil liability. The district court approved settlement agreements involving plaintiffs, Ranger Insurance, and Industrial Maintenance. The district court's ruling on the cross-motions for partial summary judgment is that any negligence on the part of DeBruce is to be attributed to LSI, thus diminishing its subrogation interest, which is asserted by Liberty. That ruling is the subject of this appeal.

Based on the trial judge's written opinion that its order involved a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, the Court of Appeals certified this interlocutory appeal pursuant to K.S.A. 60-2102(b). The court transferred the case from the Court of Appeals. See K.S.A. 20-3018(c).

The sole issue is whether LSI's subrogation interest against plaintiffs' settlement recovery should be reduced by the extent of DeBruce's negligence pursuant to K.S.A. 44-504(d).

In its order granting partial summary judgment in favor of plaintiffs, the district court, finding no material disputes of fact, adopted the uncontroverted contentions of fact submitted by both parties.

The following statement of facts is based on the district court's findings:

LSI is a temporary employment agency that has provided DeBruce with entry level production workers. Plaintiffs who were sent by LSI to DeBruce are Miguel Rios, Darryl Williams, and Carlos Amador. The deceased plaintiffs who were sent by LSI to DeBruce were Noel Najera, Victor Castaneda, and Jose Ortiz.

On June 8, 1998, the day of the explosion, the LSI workers were performing general labor. LSI provided only laborers to DeBruce, LSI provided no supervisors.

The LSI workers were not supervised by LSI. They were supervised by Dale Lock, a DeBruce superintendent. It was not the responsibility of LSI to supervise the workers. At no time during the year before the explosion did anyone from LSI's permanent employment staff go to the DeBruce elevator to supervise LSI workers there. Any decision to place any of the LSI workers in a supervisory position at the DeBruce elevator would have been made by DeBruce, not LSI.

The LSI workers were not trained by LSI. None of the LSI workers who were at DeBruce the day of the explosion received training of any kind from LSI. LSI workers were trained by DeBruce along with its permanent staff.

The LSI workers were not given safety instructions by LSI. Believing that it was standard industry procedure to do so, LSI relied on its clients to provide a safe working environment for workers. LSI told its workers to follow the safety rules of the facility where they worked and to inform the job site supervisor of unsafe conditions. LSI expected DeBruce to provide LSI workers with safety rules for the facilities in which they worked. LSI was advised by Dale Lock that LSI workers at DeBruce had been provided with safety rules for the elevator.

The LSI workers did not "check in" for a day's work at LSI. Instead, they went directly to the DeBruce elevator and reported to Dale Lock. LSI workers who had been working for more than several weeks at the DeBruce elevator never went to LSI's headquarters.

The LSI workers were not furnished with equipment by LSI. DeBruce supplied the equipment necessary for jobs performed by LSI workers at the elevator.

The LSI workers' hours were not controlled by LSI. DeBruce controlled the number of hours each LSI worker was required to work each week. LSI workers' hours were recorded by DeBruce. The hourly information was provided by DeBruce to LSI, LSI billed DeBruce for the hours worked by LSI workers, and LSI issued paychecks to the workers. The LSI workers received their paychecks from Dale Lock, who picked up the paychecks from the LSI office and took them to the DeBruce facility for distribution.

Upon DeBruce's motion for summary judgment, the district court concluded that DeBruce was the statutory employer of the LSI workers. Summary judgment was entered in DeBruce's favor on this issue. DeBruce has paid no workers compensation benefits to, or for the benefit of, any of the LSI workers on account of the June 1998 elevator explosion. DeBruce has no subrogation interest or credits against future payments of compensation or benefits to the LSI workers.

The only workers compensation benefits that have been paid to the LSI workers on account of the June 1998 elevator explosion were paid by LSI's insurer, Liberty.

The LSI workers recovered settlements from Industrial Maintenance and Ranger Insurance. Portions of the settlement amounts are held in a court-controlled account pending resolution of issues related to subrogation liens. DeBruce, which had been dismissed as a defendant, participated in the settlement as a cross-claimant.

With their motion for partial summary judgment, plaintiffs sought a ruling that, because LSI delegated its employer's responsibilities, including supervision, training, and providing a safe workplace, to DeBruce, the causal negligence of DeBruce is deemed to be the negligence of LSI, thus reducing the workers compensation lien asserted by Liberty on its own and LSI's behalf. In its cross-motion, Liberty sought a ruling that the causal negligence of DeBruce can not be imputed to LSI so as to reduce its workers compensation lien. The district court ruled in favor of the plaintiffs. The district court stated:

"Based upon the parties' contentions of uncontroverted fact, the Court does find that LSI Corporation (LSI), a temporary employment service agency, delegated duties it had as an employer of these plaintiffs to DeBruce Grain, Inc., and LSI did so lawfully. LSI delegated to DeBruce Grain, Inc., the control, supervision, training, the providing of a safe workplace, and other employment matters to DeBruce Grain, Inc. In the context of the Kansas workers compensation law in this case, [another district judge to whom this case was assigned at an earlier time] has determined, in fact, that DeBruce Grain, Inc., is LSI for purposes of the workers compensation law, and the Court rules that they are one and the same for purposes of the entire workers compensation act.

"While the Court appreciates the argument presented on behalf of the Intervener, LSI has the ultimate responsibility for the employer's duties. That responsibility includes having its statutory liens reduced because of the negligence of DeBruce Grain, Inc. If the primary purpose here is to prevent a double recovery by the plaintiffs then the Court's interpretation of the law and that advanced by the plaintiff's counsel will prevent that occurrence.

"The Court does not believe there will be a double recovery to the plaintiffs. The double recovery would be to LSI if LSI is allowed to retain its full lien in spite of the negligence of the party, DeBruce Grain, Inc., that LSI put in charge of all these responsibilities.

"For the foregoing reasons, Intervener Liberty Mutual Insurance Company's Motion for Partial Summary Judgment is denied. The Plaintiff's Motion for Partial Summary Judgment as requested on behalf of the plaintiffs is hereby granted. For purposes of trial the negligence of DeBruce Grain, Inc., will be attributed to LSI or Intervener Liberty Mutual Insurance Company at trial of this action."

Where, as here, there is no dispute regarding the facts, appellate review of an order regarding summary judgment is de novo. *Veatch v. Beck*, 252 Kan. 1081, 1082, 850 P.2d 923 (1993). Resolution of this case involves the interpretation of provisions of the Workers Compensation Act. Interpretation of a statute also is a question of law, and the court's review is unlimited. *Babe Houser Motor Co. v. Tetreault*, 270 Kan. 502, 506, 14 P.3d 1149 (2000).

The parties state that this is a matter of first impression. Our research has not revealed any cases in which the relevant statutory provisions have been applied in similar circumstances.

K.S.A. 44-504(a) provides:

"(a) When the injury or death for which compensation is payable under the workers compensation act was caused under circumstances creating a legal liability against some person other than the employer . . . to pay damages, the injured worker or the worker's dependents or personal representatives shall have the right

to take compensation under the workers compensation act and pursue a remedy by proper action in a court of competent jurisdiction against such other person."

The LSI workers, as authorized by K.S.A. 44-504(a), took workers compensation benefits from the employer, LSI, and pursued a remedy in court against Industrial Maintenance and Ranger Insurance. The LSI workers recovered settlements from those defendants.

K.S.A. 44-504(b) provides in part:

"In the event of recovery from such other person by the injured worker or the dependents or personal representatives of a deceased worker by judgment, settlement or otherwise, the employer shall be subrogated to the extent of the compensation and medical aid provided by the employer to the date of such recovery and shall have a lien therefor against the entire amount of such recovery . . . ."

Under subsection (b) of 44-504, LSI is subrogated to the extent of the workers compensation benefits it has paid to its employees and LSI has a lien against the settlement recovered by LSI workers from Industrial Maintenance and Ranger Insurance. Liberty, LSI's workers compensation carrier, stands in the shoes of LSI. See K.S.A. 44-5a08.

The question for the court is whether LSI's subrogation interest is to be reduced to the extent of DeBruce's negligence. K.S.A. 44-504(d) controls the issue, and it provides:

"If the negligence of the worker's employer or those for whom the employer is responsible, other than the injured worker, is found to have contributed to the party's injury, the employer's subrogation interest or credits against future payments of compensation and medical aid, as provided by this section, shall be diminished by the percentage of the recovery attributed to the negligence of the employer or those for whom the employer is responsible, other than the injured worker."

K.S.A. 44-504(d) applies to cases that are settled as well as litigated cases. *Maas v. Huxtable & Assocs., Inc.*, 23 Kan. App. 2d 236, 245, 929 P.2d 780 (1996). The district court concluded that DeBruce, the statutory employer, was an employer within the meaning of K.S.A. 44-504(d) so that LSI's lien would be reduced because of DeBruce's negligence.

Liberty advances two main arguments against the district court's conclusion. First, Liberty contends that the designation "statutory

employer" is a judicially created concept signifying *only* that an entity is immune from civil liability. Liberty's notion is far too narrow. The Workers Compensation Act is extended by K.S.A. 44-503 "to certain individuals or entities who are not the immediate employers of the injured workers, but rather are 'statutory employers.' *Bright v. Cargill, Inc.*, 251 Kan. 387, 393, 837 P.2d 348 (1992)." *Robinett v. The Haskell Co.*, 270 Kan. 95, 98, 12 P.3d 411 (2000). In K.S.A. 44-503(g), which was added in 1994, the legislature relieved the principal contractor/statutory employer of responsibility for workers compensation coverage by leaving "the coverage question up to the subcontractor and the principal contractor." 270 Kan. at 107. In *Robinett*, the court concluded that sound reasons remained, even after the principal contractor was relieved of coverage responsibility for workers compensation coverage, for retaining immunity for a statutory employer:

"Where coverage is secured by the subcontractor, the principal contractor remains only contingently liable. By so providing, the legislature encourages the principal in his or her negotiations with the subcontractor to require the subcontractor to secure workers compensation coverage of its direct employees. . . .

"The cost of such coverage becomes a factor in the negotiations of the parties and is factored into the contract, with the result that between the parties the cost of coverage is shared, if not paid for, by the principal contractor. Thus, the principal is still providing quid pro quo for its immunity. . . .

"Given the primary responsibility of the principal to either provide workers compensation coverage or contract for it to be provided by the subcontractor, the remaining contingent liability of the principal, the lack of any express language governing third-party tort liability in K.S.A. 1999 Supp. 44-503, and the fact that immunity furthers the policy of the statute to ensure that workers are not deprived of workers compensation coverage, we conclude that in passing K.S.A. 1999 Supp. 44-503, the legislature did not intend to subject principal contractors to tort liability for injuries to the employees of subcontractors, even where the principal contractor is not liable for workers compensation benefits because such coverage is secured by the subcontractor."

270 Kan. at 107-08.

From the court's opinion in *Robinett*, it is apparent that even after primary responsibility for securing workers compensation coverage was removed from the statutory employer, that entity plays an integral and significant part in the statutory workers compensation scheme. Liberty's contentions to the contrary are without merit.

Second, Liberty argues that the term "employer" in K.S.A. 44-504(d), which provides for reduction of LSI's subrogation interest, does not include a subcontractor or statutory employer. Liberty's statutory construction argument begins with the maxim that the same word used repeatedly in a statutory provision or scheme must be given the same meaning throughout. See *Central State Bank v. Albright*, 12 Kan. App. 2d 175, 179, 737 P.2d 65 (1987). Accordingly, the multiple appearances of "employer" in K.S.A. 44-504(d) all must be given the same meaning. One of the appearances of "employer" in the subsection is as the possessor of a subrogation interest or credit. Liberty contends that, because LSI is the direct employer and the only entity with a subrogation interest, use of "employer" in the statute can only mean LSI and all the other uses of "employer" in 44-504(d) must be construed to mean LSI, too. So interpreted, 44-504(d) could only provide: If LSI's negligence is found to have contributed to the worker's injury, LSI's subrogation interest or credits against future payments of compensation and medical aid, as provided by this section, shall be diminished by the percentage of the recovery attributed to LSI's negligence.

Plaintiffs respond that there are sound policy reasons as well as statutory authority for construing K.S.A. 44-504(d) as reducing LSI's subrogation interest by DeBruce's fault. The two grounds are interrelated.

In deciding in *Robinett* that the principal contractor's immunity from tort liability was not dependent on the principal contractor's furnishing workers compensation coverage, the court favored and fostered a scheme of reciprocal responsibilities and incentives. In *Robinett*, the court explained that an immunized principal contractor will work to see that the subcontractor secures workers compensation coverage of its direct employees and the subcontractor will pass some or all of the cost of coverage through to the principal contractor. "If the principal does not obtain immunity, there is really no incentive for the employer to hire a contractor with workers compensation coverage, especially where the principal will likely have to pay a higher price for such a contractor as opposed to a contractor who is uninsured." 270 Kan. at 107. Hence, the court concluded that immunity advances the overarching goals

of the statutory scheme. The plaintiffs' position in the present case, characterizing DeBruce as the principal and LSI as the contractor, is that the overarching goals of the statutory scheme will be served by taking the principal's negligence into account for the purpose of reducing the contractor's subrogation rights. If the principal is held accountable so that its negligence diminishes the contractor's subrogation interest, there will be greater incentive for the two to work together to ensure workers' safety.

Moreover, according to plaintiffs, the legislative intent to reduce a contractor's subrogation interest by a principal's fault is apparent in the plain language of the statutory scheme. Plaintiffs direct the court's attention to K.S.A. 44-503(a), which provides:

"Where any person (in this section referred to as principal) undertakes to execute any work which is a part of the principal's trade or business or which the principal has contracted to perform and contracts with any other person (in this section referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any worker employed in the execution of the work any compensation under the Workers Compensation Act which the principal would have been liable to pay if that worker had been immediately employed by the principal; and where compensation is claimed from or proceedings are taken against the principal, then in the application of the Workers Compensation Act, references to the principal shall be substituted for references to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the worker under the employer by whom the worker is immediately employed. For the purposes of this subsection, a worker shall not include an individual who is a self-employed subcontractor."

Without necessarily accepting plaintiffs' terminology for the LSI/DeBruce relationship, the court agrees that K.S.A. 44-503(a) is key to resolution of the issue.

In *Robinett*, the court discussed this statutory provision:

"The statute extends the application of the Kansas Workers Compensation Act to certain individuals or entities who are not the immediate employers of the injured workers, but rather are 'statutory employers.' *Bright v. Cargill, Inc.*, 251 Kan. 387, 393, 837 P.2d 348 (1992). The impact of K.S.A. 1999 Supp. 44-503 is to allow an employee of a contractor to recover workers compensation benefits from either his immediate employer or the principal contractor, so long as the work being done by the employee is either an integral part of the principal's trade or business or is work that would ordinarily have been done by an employee of the principal.

See *Coble v. Williams*, 177 Kan. 743, 750-51, 282 P.2d 425 (1955). The purpose for this statute is ' "to prevent employers from evading liability under the act by the device of contracting with outsiders to do work which they have undertaken to do as a part of their trade or business." (Citations omitted.)' *Zehring v. Wickham*, 232 Kan. 704, 707, 658 P.2d 1004 (1983). A statutory employer is immune from a common-law suit for damages due to the exclusive remedy provision even when the injured employee chooses to receive workers compensation benefits from his or her immediate employer rather than the statutory employer because the employee could have recovered compensation from the statutory employer. See *Bright v. Cargill, Inc.*, 251 Kan. at 392-393; *Zehring v. Wickham*, 232 Kan. at 707." 270 Kan. at 98.

Under 44-503(a), the principal and subcontractor are dual employers for purposes of the Workers Compensation Act. See *Bright v. Cargill, Inc.*, 251 Kan. 387, 389, 837 P.2d 348 (1992). In line with the principal's status as an employer, the statute dictates that "where compensation is claimed from or proceedings are taken against the principal, then in the application of the workers compensation act, references to the principal shall be substituted for references to the employer." K.S.A. 44-503(a). Plaintiffs contend that references to the employer in K.S.A. 44-504(d) are subject to the directive of 44-503(a) in the circumstances of this case.

As we have seen, Liberty contends that the same entity must be inserted each time the word "employer" appears in 44-504(d), and Liberty further contends that the entity must be LSI. Because DeBruce and LSI are dual employers under 44-503(a), no reason appears why the entity must be LSI rather than DeBruce. If references to DeBruce are substituted for *each* of the references to the employer in 44-504(d), as Liberty contends is required, the provision would provide that, if the negligence of DeBruce is found to have contributed to the plaintiffs' injuries, DeBruce's subrogation interest is to be diminished by the percentage of the recovery attributed to the negligence of DeBruce. This result is unreasonable and readily avoidable. As a general rule, statutes are construed to avoid unreasonable results. *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 643, 941 P.2d 1321 (1997). Because DeBruce and LSI are dual employers under 44-503(a), there is no inconsistency in substituting either DeBruce or LSI for the term employer in 44-504(d) as appropriate. In the circumstances of this case, LSI

paid workers compensation benefits and consequently holds the subrogation interest. See K.S.A. 44-504(b). DeBruce, on the other hand, is the employer whose negligence has been raised as an issue. If references to DeBruce are substituted for references to the employer except to the employer that holds a subrogation interest, the provision would provide that, if the negligence of DeBruce is found to have contributed to the plaintiffs' injuries, LSI's subrogation interest is to be diminished by the percentage of the recovery attributed to the negligence of DeBruce. See *Workers Compensation Fund v. Silicone Distributing, Inc.*, 248 Kan. 551, 560-61, 809 P.2d 1199 (1991) (rejecting the Fund's argument in a subcontracting case that "employer" in subsections (a) and (b) of K.S.A. 44-532a must refer to the same entity).

In construing statutes and determining legislative intent, several provisions of an act must be construed together with a view to reconciling and bringing them into workable harmony if possible. *Petty v. City of El Dorado*, 270 Kan. 847, 852, 19 P.3d 167 (2001). K.S.A. 44-503(a) and 44-504(d) are reconcilable when the dual employers of 44-503(a) are substituted as appropriate in the particular circumstances for the term "employer" in 44-504(d).

Although LSI contracted to provide employees to do work for DeBruce rather than to do work which LSI was obligated to perform, for purposes of K.S.A. 44-503 it is a distinction without a difference. At the job site the plaintiff employees worked for and were controlled by DeBruce. For all practical purposes, the relationship of LSI, DeBruce, and the plaintiff employees mirrored that which existed in *Robinett*. The danger of an employer evading liability under the Act by such a contractual device is the same in either case. Here, LSI is the principal employer and DeBruce is the statutory employer.

Moreover, construing K.S.A. 44-504(d) to reduce LSI's subrogation interest is consistent with the policy considerations expressed by the court in *Robinett* of balancing responsibilities and incentives in order to attain the overall purpose of K.S.A. 44-503. As we have seen, the statute was intended to prevent employers from evading workers compensation liability by contractual device. In *Robinett*, the court concluded that the purpose of preventing

employers from evading workers compensation liability was advanced, not directly but through intertwined responsibilities and incentives, by immunizing the principal. In the circumstances of the present case, the equally worthy purpose of encouraging employers to exercise responsibility for workers' safety would be served by allowing the principal's subrogation interest to be reduced by the statutory employer's fault. If the statutory employer's negligence is taken into account so that it diminishes the principal's subrogation interest, there will be greater incentive for the dual employers to work together to ensure workers' safety.

It appears from the facts of this case that LSI exercised little or no responsibility for its workers' safety. The district court found that the LSI workers were neither trained by LSI nor given any safety instructions by LSI. LSI relied entirely on DeBruce to provide a safe working environment for workers. LSI told its workers that they were to report any unsafe working conditions to the DeBruce supervisor, not to LSI.

Liberty asserts that the substitution of the principal for the employer pursuant to K.S.A. 44-503(a) is to occur only when *workers compensation* claims and proceedings are taken against the principal. K.S.A. 44-503(a) states: "[W]here compensation is claimed from or proceedings are taken against the principal, then in the application of the workers compensation act, references to the principal shall be substituted for references to the employer." The plain language of the statute provides for the substitution to be made "in the application of the workers compensation act," but does not limit proceedings taken against the principal to proceedings pursuant to the Act. A statute should not be read so as to add that which is not readily found in it. *GT, Kansas, L.L.C. v. Riley County Register of Deeds*, 271 Kan. 311, 316, 22 P.3d 600 (2001).

Here, the claims for compensation are against the principal, LSI. Further, the present case is a consolidated civil proceeding of third-party actions taken by LSI workers variously against Industrial Maintenance, Ranger Insurance, and DeBruce. Due to its status as statutory employer, DeBruce was dismissed as a defendant, but DeBruce remained a party to the litigation. As a cross-claimant, DeBruce received a portion of the settlement from Industrial

Maintenance's policy limits. The balance was settled on DeBruce survivors and heirs. DeBruce, as statutory employer, avoided liability by being dismissed as a defendant but profited from its status as a party by its cross-claim against the third parties. The K.S.A. 44-503(a) clause, "where . . . proceedings are taken against the principal," should not be read so narrowly as to negate application in the present circumstances. Proceedings have been taken against DeBruce, the statutory employer, and the statutory web of reciprocal responsibilities and incentives is served by substituting the statutory employer for references to the employer where appropriate in the application of the Workers Compensation Act.

For the reasons set forth in this opinion, we construe together the provisions of K.S.A. 44-504 and K.S.A. 44-503 and hold that a principal's subrogation interest is reduced by the percentage of the fault of the statutory employer. The trial court correctly reduced LSI's subrogation interest in the plaintiff's settlement to the extent of DeBruce's fault.

Liberty contends that the plaintiffs will secure a double recovery if the district court's ruling is affirmed. It has been said that the legislature's primary purpose in creating a compensation payer's subrogation right is to prevent double recovery by employees. See *Maas*, 23 Kan. App. 2d at 239. The legislature's subsequent provision for diminution of a subrogation lien, however, demonstrates that the legislature put a higher value on reducing a subrogation lien based upon the percentage of negligence attributed to the employer. See 23 Kan. App. 2d at 242. In this case, the district court believed that any inequity in recovery would result from LSI retaining its full lien despite DeBruce negligence rather than from LSI's subrogation interest being reduced by DeBruce negligence. We agree.

Liberty also argues that, because the settlement represents recovery only for the fault of Industrial Maintenance and not for any fault of DeBruce, the settlement recovery should not be "attributed to the negligence of either" LSI or DeBruce. K.S.A. 44-504(d) does not deem the recovery to include amounts for the negligence of any party not contributing to the recovery fund. Instead, the statutory provision authorizes the plaintiffs to keep a greater per-

centage of a recovery by reducing the compensation payer's subrogation interest in it.

Liberty also seeks rulings that there is no evidence that any negligence of LSI, as opposed to DeBruce negligence imputed to LSI, caused or contributed to cause the grain elevator explosion, that LSI was not an insurer of LSI workers' safety, and that there is no evidence that any duty delegated by LSI to DeBruce was breached. The district court's ruling certified for interlocutory appeal was that any negligence found on the part of DeBruce will be attributed to LSI under K.S.A. 44-504(d) for the purpose of reducing LSI's subrogation interest in the settlement recovery. The issue certified for appeal requires the court to interpret provisions of the Workers Compensation Act in order to determine whether the district court correctly granted summary judgment in favor of the plaintiffs and against Liberty. The rulings sought by Liberty are unnecessary to the court's interpretation of the statutes and are beyond the scope of this appeal.

Affirmed.

ABBOTT, J., not participating.

BRAZIL, S.J., assigned