No. 122,078

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

VICKI SCHMIDT, Kansas Insurance Commissioner,
*Appellee/Cross-appellant*,

v.

TRADEMARK, INC.,
*Appellant/Cross-appellee*,

v.

DOROTEO BALLIN and BALLIN COMPANY, LLC,
*Appellees*.

SYLLABUS BY THE COURT

1.

The Workers Compensation Act, K.S.A. 44-501 et seq., is to be liberally construed to bring employers and employees within the provisions of the law, and the Act's provision should be applied impartially to both employers and employees in cases arising under it. The goal is inclusion of employers and employees, not their exclusion.

2.

A principal contractor's obligation to pay workers compensation to an injured employee of its subcontractor has been a tenet of the Kansas Workers Compensation Act since its enactment. The purpose was to prevent employers from evading liability under the Act by subcontracting out work which they have undertaken to do.

1

3.

A principal contractor is secondarily liable if the subcontractor fails to provide workers compensation benefits to its employees. K.S.A. 44-503(g).

4.

The Legislature created the Workers Compensation Fund so an injured worker of an uninsured employer can receive compensation from the Fund under K.S.A. 44-532a(a).

5.

The Workers Compensation Fund, under K.S.A. 44-532a(b), has a cause of action against an employer for recovery of any amounts the Fund paid to an injured worker as workers compensation benefits.

6.

A judicial dictum is an expression of opinion on a question directly involved in a particular case, argued by counsel, and deliberately ruled on by the court, although not necessary to a decision. While not binding, judicial dictum is entitled to greater weight than obiter dictum and should not be lightly disregarded by lower courts. Obiter dictum is something said in passing. Obiter dictum is an expression of opinion on a collateral question not directly involved in the case.

7.

When construing statutes to determine legislative intent, appellate courts must consider various provisions of an act *in pari materia* with a view of reconciling and bringing the provisions into workable harmony if possible.

8.

A Kansas court may not award attorney fees unless there is statutory authority to do so or there is an agreement by the parties for the award of attorney fees.

9.

In order to give a court the ability to award attorney fees, a statute must specifically authorize recovery of attorney fees rather than use general language such as "costs" or "expenses." The language in K.S.A. 2020 Supp. 44-532a does not specifically authorize attorney fees.

Appeal from Sedgwick District Court; JEFFREY E. GOERING, judge. Opinion filed May 28, 2021. Affirmed.

*William L. Townsley III* and *Brian E. Vanorsby*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, for appellant/cross-appellee Trademark, Inc.

*John C. Nodgaard*, of Arn, Mullins, Unruh, Kuhn & Wilson, LLP, of Wichita, for appellee/cross-appellant Vicki Schmidt, Kansas Insurance Commissioner.

No appearance by appellees Doroteo Ballin and Ballin Company, LLC.

Before HILL, P.J., BRUNS and SCHROEDER, JJ.

HILL, J.: This is an appeal of a summary judgment granted to the Workers Compensation Fund. The Fund had paid compensation to an injured worker of an insolvent subcontractor that had no workers compensation insurance. Can the Fund, in a separate lawsuit, recover those costs from the contractor that hired the subcontractor? After considering the facts, the aims and provisions of the Workers Compensation Act, and the reasoning of our Supreme Court, we hold the Fund can recover from the contractor. Thus, we affirm.

3

*The facts are undisputed.*

Trademark, Inc., a construction general contractor, hired Doroteo Ballin, a sole proprietor of Ballin Company, LLC, to work as a subcontractor on a construction job. While working on the Trademark job, Juan Medina, an employee of Ballin, fell off a ladder and was injured. He received medical treatment. Medina started a workers compensation action against Ballin, his employer, but Ballin had no workers compensation insurance to cover his injury and lacked the financial means to pay any compensation to Medina.

This lack of insurance and insolvency led Medina to implead the Kansas Workers Compensation Fund into his workers compensation case. The Fund, then, tried to bring Trademark, the general contractor into the case but did not succeed because there is no statute allowing such a procedure. In the end, the administrative law judge awarded Medina $17,432.87 as compensation for his fall. The award was made jointly against Ballin and the Fund. Pertinent to the arguments here, Trademark was not a party to the case and the ALJ made no finding that Trademark was uninsured or insolvent. This brings us to the action that led to this appeal.

In a separate lawsuit, the Fund sued Trademark seeking to recover what it had paid to Medina, along with its attorney fees. Trademark answered by arguing that the Fund had not stated a cause of action against it because Trademark was not Medina's employer as required by K.S.A. 44-532a(b). Both the Fund and Trademark moved for summary judgment. The district court ruled the Fund could recover from Trademark under K.S.A. 44-503(a) and K.S.A. 44-532a(b) but denied the Fund's request for attorney fees.

The court, after considering several sections of the Act and some caselaw, reasoned that Trademark, as the principal employer, was responsible for workers compensation benefits for its insolvent uninsured subcontractors. In other words, the

4

court ordered Trademark to pay the Fund what the Fund had paid Medina as workers compensation benefits. Trademark appeals the judgment, and the Fund cross-appeals the denial of its claim for attorney fees.

In our analysis, we first examine several provisions of the Act and note the interchangeable concept of "employer" in the law. We then move to the statute that is the center of the controversy between the Fund and Trademark. The Fund argues the law makes Trademark responsible for the benefits it has paid. Trademark says the law does not apply to it. Finally, we will review the Supreme Court's reasoning in *Workers Compensation Fund v. Silicone Distributing, Inc.*, 248 Kan. 551, 809 P.2d 1199 (1991), cited by the district court, relied on by the Fund, and rejected as nonbinding by Trademark. After that, we move to the question of attorney fees raised by the Fund in its cross-appeal.

*We review several aspects of our workers compensation law.*

The Legislature wants the Workers Compensation Act, K.S.A. 44-501 et seq., to work. It is to be liberally construed to bring employers and employees within the provisions of the law, and the Act's provision should be applied impartially to both employers and employees in cases arising under it. K.S.A. 2020 Supp. 44-501b(a). See *Fernandez v. McDonald's*, 296 Kan. 472, 479-80, 292 P.3d 311 (2013). The goal is inclusion of employers and employees, not their exclusion.

The Act considers how workers are employed and paid through the various levels of the construction industry. The roles of owners, contractors, subcontractors, and workers are all recognized by various sections of the law. But the overall aim of the Act is the swift assessment and payment of workers compensation benefits to workers injured on the job. The benefits must be paid—the party that is ultimately responsible to pay can be sorted out later. We are now engaged in sorting this out.

To meet this aim of prompt payment of benefits is why a principal contractor's obligation to pay workers compensation to an injured employee of its subcontractor has been a tenet of the Kansas Workers Compensation Act since its enactment. The purpose was to prevent employers from evading liability under the Act by subcontracting out work which they have undertaken to do. *Robinett v. Haskell Co.*, 270 Kan. 95, 98, 12 P.3d 411 (2000). This also promotes the goal of inclusion mentioned above.

The current law that promotes the concept of swift payment of benefits makes the principal contractor liable for the benefits *as if* the injured worker worked for the principal:

> "(a) Where any person (in this section referred to as principal) undertakes to execute any work which is a part of the principal's trade or business or which the principal has contracted to perform and contracts with any other person (in this section referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any worker employed in the execution of the work any compensation under the workers compensation act which the principal would have been liable to pay if that worker had been immediately employed by the principal." K.S.A. 44-503.

The Act makes it clear that when you construe its provisions, references to "employer" may refer to a principal contractor rather than the employee's direct employer (the subcontractor):

> "[A]nd where compensation is claimed from or proceedings are taken against the principal, then in the application of the workers compensation act, references to the principal shall be substituted for references to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the worker under the employer by whom the worker is immediately employed." K.S.A. 44-503.

6

But this responsibility to pay benefits is a substitutionary role. The principal contractor is secondarily liable if the subcontractor fails to provide workers compensation benefits to its employees. K.S.A. 44-503(g); *Robinett*, 270 Kan. at 100. This means if the subcontractor cannot pay workers compensation benefits, then the contractor will.

If a contractor is forced to pay benefits in its substitutionary role, then it may seek reimbursement for what is spent. The Act provides that a principal contractor, "when sued by a worker of a subcontractor, shall have the right to implead the subcontractor." K.S.A. 44-503(e). And the Act grants the principal contractor a right to recover against the subcontractor that has been impleaded. K.S.A. 44-503(f). This means that when an injured worker of a subcontractor sues the contractor for compensation, then the contractor may bring the subcontractor into the case.

But the Act does not grant an injured worker the right to implead the principal contractor when the worker sues a subcontractor. So Medina could not have impleaded Trademark into his workers compensation action against his employer, Ballin. This is because there is a public policy that comes into play here—a prohibition against double recovery.

This policy is found in *Coble v. Williams*, 177 Kan. 743, 751-52, 282 P.2d 425 (1955). The Kansas Supreme Court held that the principal contractor is not a necessary or proper party in such an action, but the principal still remains contingently liable should the subcontractor be unable to pay the award. In *Coble*, unlike the facts here, both the principal contractor and subcontractor were solvent. The *Coble* court was concerned about the prospect of a double recovery. We note that all of this was before the Fund was created.

The Legislature created the Fund in 1974. An injured worker of an uninsured "employer" can receive compensation from the Fund under K.S.A. 2020 Supp. 44-532a.

7

This is the key statute in this appeal. Subsection (a) allows injured workers to apply to the director to pay compensation:

> "(a) If an employer has no insurance or has an insufficient self-insurance bond or letter of credit to secure the payment of compensation, as provided in subsection (b)(1) and (2) of K.S.A. 44-532, and amendments thereto, and such employer is financially unable to pay compensation to an injured worker as required by the workers compensation act, or such employer cannot be located and required to pay such compensation, the injured worker may apply to the director for an award of the compensation benefits, including medical compensation, to which such injured worker is entitled, to be paid from the workers compensation fund."

The statute makes the procedure for processing these claims to be like all others:

> "Whenever a worker files an application under this section, the matter shall be assigned to an administrative law judge for hearing. If the administrative law judge is satisfied as to the existence of the conditions prescribed by this section, the administrative law judge may make an award, or modify an existing award, and prescribe the payments to be made from the workers compensation fund as provided in K.S.A. 44-569, and amendments thereto. The award shall be certified to the commissioner of insurance, and upon receipt thereof, the commissioner of insurance shall cause payment to be made to the worker in accordance therewith." K.S.A. 2020 Supp. 44-532a(a).

Subsection (b) then grants the Fund a cause of action against "the employer" for recovery of "any amounts" the Fund paid:

> "(b) The commissioner of insurance, acting as administrator of the workers compensation fund, shall have a cause of action against the employer for recovery of any amounts paid from the workers compensation fund pursuant to this section. Such action shall be filed in the district court of the county in which the accident occurred or where the contract of employment was entered into." K.S.A. 2020 Supp. 44-532a(b).

8

That brings us to the question we must answer. Can the Fund only sue the employers mentioned in K.S.A. 2020 Supp. 44-532a(a)—that is, only the uninsured, insolvent, or vanished employers? In other words, under this law, can the Fund only sue others from whom they probably cannot collect?

Trademark argues the term "employer" in both K.S.A. 2020 Supp. 44-532a(a) and (b) are the same. Thus, since it is not uninsured, insolvent, or vanished, the Fund has no cause of action against it. Trademark argues the district court erred when it granted summary judgment to the Fund.

The Fund counters Trademark by arguing two points. First, the language from K.S.A. 44-503 that says, "in the application of the workers compensation act, references to the principal shall be substituted for references to the employer" applies here. And second, the holding in *Silicone Distributing* shows the terms should not be considered identical and the court correctly granted it summary judgment.

The Supreme Court confronted this question directly in *Silicone Distributing*, and concluded that when the Fund is liable for payment of an award under K.S.A. 44-532a(a) because a subcontractor is financially unable to pay or cannot be located, the Fund shall have a cause of action against the principal contractor under K.S.A. 44-532a(b). 248 Kan. 551, Syl. ¶ 3.

Thus the "employer" in K.S.A. 44-532a(a) and (b) need not be the same entity in a particular case. 248 Kan. at 560-61. See also *Duarte v. Debruce Grain, Inc.*, 276 Kan. 598, 608, 78 P.3d 428 (2003). In *Duarte*, 276 Kan. at 608, the court cited and adopted its reasoning from *Silicone Distributing*, when it rejected an argument that the term "employer" had to refer to the same entity throughout K.S.A. 44-504(d).

9

The substitutionary liabilities of employers in the Workers Compensation Act called for a different entity to be responsible. The *Duarte* court emphasized that "in construing statutes and determining legislative intent, several provisions of an act must be construed together with a view to reconciling and bringing them into workable harmony if possible." 276 Kan. at 608. This ruling reconciling all the provisions of the Act is what the district court followed here in holding the Fund had a cause of action against Trademark. Because the question of the principal contractor's liability was central to the case, we see no error in the district court's holding.

*We discuss the ruling of* Silicone Distributing.

The facts of *Silicone Distributing* are similar to the facts in this case. In that case, Osborne Construction Company (the principal contractor) subcontracted a job to Silicone Distributing, Inc. (the subcontractor). A worker was injured on that job in the course of her employment with the subcontractor. The worker filed a claim for workers compensation benefits naming the subcontractor. Just after, the worker impleaded the Fund because she believed the subcontractor to be uninsured or insolvent. Later, the worker also named the principal contractor. But the principal contractor moved for dismissal because a worker could not proceed against both the subcontractor and principal at the same time (under the ruling in *Coble*).

In response, the worker moved to dismiss the principal contractor and that motion was granted. The ALJ awarded the worker benefits to be paid by the subcontractor. The ALJ dismissed the Fund from the case. Because the subcontractor was insolvent and had no insurance, the ALJ suggested the worker should pursue a claim against the principal under K.S.A. 44-503.

The Director of Workers Compensation reversed in part, finding the Fund was liable and that the worker did not need to pursue the principal. The Fund sought judicial

10

review, contending that the pursuit of a claim by the worker against the principal was a prerequisite for Fund liability. On appeal, the district court rejected the Fund's contention, noting that the purpose of the Act was to expeditiously provide compensation to injured workers.

To our Supreme Court, the Fund argued it was only liable as a party of last resort and the worker had to first exhaust her claim against the principal. The worker argued the plain language of K.S.A. 44-532a contained no administrative exhaustion requirement and that such a requirement would conflict with the purposes of the Act.

In deciding the case, the court quoted relevant parts of K.S.A. 44-532a and K.S.A. 44-503 and then examined the historical background and legislative history of each. *Silicone Distributing*, 248 Kan. at 557-59. The court then stated that the "historical background, legislative history *and language of the statute are inconclusive*." (Emphasis added.) 248 Kan. at 560. The court held that an injured worker need only assert a claim against the subcontractor and implead the Fund. If the subcontractor is insolvent and the Fund pays, the Fund can then make a claim against the principal in a separate action:

> "The burden of exhausting remedies against all potential employers is not to be carried by the claimant alone. The claimant need only elect to assert a compensation claim against either the [subcontractor] or the [principal], as was done by [the worker]. If the employer from which compensation is sought is insolvent or cannot be located, the Fund may be impleaded. If the Fund pays on a claim, it may assert a K.S.A. 44-532a(b) cause of action against either the insolvent or unlocated employer, or the solvent [principal], or both. However, the Fund may receive only one recovery." 248 Kan. at 560.

The court based this conclusion on the language in K.S.A. 44-503(a) stating that "'where compensation is claimed from or proceedings are taken against the principal, then in the application of the workmen's compensation act, references to the principal shall be substituted for references to the employer.'" 248 Kan. at 560. "Therefore, 'an employer' in

11

K.S.A. 44-532a would refer to 'a principal' where compensation is claimed from or proceedings are taken against the principal." 248 Kan. at 560. The court rejected the Fund's argument that the "employer" in K.S.A. 44-532a(a) and (b) must refer to the same entity and the principal's argument that "proceedings" were not being taken against it. 248 Kan. at 560-61. "Once the Fund files a K.S.A. 44-532a(b) cause of action against the alleged principal, the references to 'employer' in K.S.A. 44-532a may be substituted with references to 'principal.' K.S.A. 44-503(a)." 248 Kan. at 561.

The court also recognized that the policy and purpose of the Act supported its interpretation of the relationship between the two statutes. 248 Kan. at 561. The court held the worker in that case did not have to exhaust her remedies against both the subcontractor and the principal before asserting her claim against the Fund. The court affirmed the award against the Fund. 248 Kan. at 562.

Neither K.S.A. 44-532a nor K.S.A. 44-503 have significantly changed since the ruling in *Silicone Distributing*. K.S.A. 44-503(g), however, was added, clarifying that the worker may not proceed against the principal contractor when the subcontractor has secured payment of workers compensation. But that is not the case here.

*We are not persuaded by Trademark's arguments.*

To us, Trademark suggests we should disregard the holding in *Silicone Distributing*. Trademark contends the relevant conclusions by the Supreme Court in *Silicone Distributing* were dicta and we are not bound to follow them. We observe, however, that merely labelling comments by an appellate court as dicta does not render those comments unpersuasive, especially when the comments are made by the Supreme Court.

12

Two types of dicta come to mind. A judicial dictum is "an expression of opinion on a question directly involved in a particular case, argued by counsel, and deliberately ruled on by the court, although not necessary to a decision." While not binding, judicial dictum is "entitled to greater weight than obiter dictum and should not be lightly disregarded" by lower courts. *Jamerson v. Heimgartner*, 304 Kan. 678, 686, 372 P.3d 1236 (2016). Obiter dictum translates to "something said in passing." Black's Law Dictionary 569 (11th ed. 2019). Obiter dictum is an expression of opinion on a collateral question not directly involved in the case. *Crescent Ring Co. v. Travelers' Indemnity Co.*, 102 N.J.L. 85, 89, 132 A. 106 (1926).

In our view, the conclusions by the *Silicone Distributing* court are judicial dicta and should not be disregarded. In *Silicone Distributing*, as Trademark does here, the Fund specifically argued that the term "employer" in K.S.A. 44-532a(a) and (b) must refer to the same entity. The *Silicone Distributing* court specifically rejected this argument. 248 Kan. at 560-61. And, in *Silicone Distributing*, the liability of a principal contractor when the subcontractor is insolvent was central to the case. Because the *Silicone Distributing* court had to examine the relationship between K.S.A. 44-532a and K.S.A. 44-503 to decide the case, we are not convinced the reasoning was dicta. The *Silicone Distributing* decision is, at the very least, entitled to great weight.

Trademark also argues that the *Silicone Distributing* court ignored the plain language of the statutes and that the *Silicone Distributing* court's approach to statutory interpretation has been more recently disavowed by the Supreme Court. But we are duty bound to follow Kansas Supreme Court precedent unless there is some indication that it is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). We have discovered no indication that the court intends to depart from its reasoning in *Silicone Distributing*.

13

How we now are to interpret statutes is well settled. When a statute is plain and unambiguous, a court must give effect to its express language, rather than determine what the law should or should not be. The first task in construing a statute is to determine legislative intent through analysis of language employed—giving ordinary words their ordinary meanings. The court does not read into the statute words not readily found there. When the language is unclear or ambiguous, the court employs the canons of statutory construction, consults legislative history, or considers other background information to learn the statute's meaning. *Hoesli v. Triplett, Inc.*, 303 Kan. 358, 362, 361 P.3d 504 (2015).

When construing statutes to determine legislative intent, appellate courts must consider various provisions of an act *in pari materia* with a view of reconciling and bringing the provisions into workable harmony if possible. *Miller v. Board of Wabaunsee County Comm'rs*, 305 Kan. 1056, 1066, 390 P.3d 504 (2017).

Even though the *Silicone Distributing* court looked at the legislative history of the statutes first, it found that it was inconclusive, and ultimately based its decision on the plain language of the statutes. The court applied the language in K.S.A. 44-503(a) (on substituting the term "employer" for "principal" where appropriate) to K.S.A. 44-532a(b) (giving the Fund a cause of action against an "employer"). That is a reasonable interpretation. The court also did ultimately find the statutes ambiguous by stating the language was "inconclusive," allowing it to take a more holistic approach to its interpretation. 248 Kan. at 560. Even though the starting point is now to look at the language of the statute, that is exactly what the Supreme Court ultimately did when it made its ruling. Trademark's argument that the wording was dicta does not tarnish the court's reasoning. We find the reasoning persuasive and we will follow it.

Trademark argues the *Silicone Distributing* court erred because K.S.A. 44-532a(a) and (b) must be read together so that the "employer" in subsection (b) can only be the

"employer" referred to in subsection (a). That interpretation leads to some profound effects.

The problem with Trademark's interpretation is that it ignores the larger context. K.S.A. 2020 Supp. 44-532a is just one statute of many grouped together to form the Act. We see no indication that the Legislature intended K.S.A. 2020 Supp. 44-532a to nullify the long-standing provision of the Act under K.S.A. 44-503 that a principal contractor is liable for the payment of workers compensation when its subcontractor is uninsured or insolvent. And the plain language of K.S.A. 44-503(a) recognizes that certain references to "employer" in the Act need to be substituted with the term "principal" to carry out the Legislature's intent to make principal contractors so liable. The term "employer" in K.S.A. 2020 Supp. 44-532a(b) is one of those references so that the Fund can recover from the principal contractor when its subcontractor was uninsured and insolvent.

Trademark argues that K.S.A. 44-503(a) does not apply here because no "compensation is claimed from" and no "proceedings are taken against the principal." Trademark reads these ordinary words too narrowly. K.S.A. 2020 Supp. 44-532a(b) states the Fund "shall have a cause of action against the employer for recovery of any amounts paid from the workers compensation fund." A lawsuit filed in the district court is a proceeding, and the amount paid from the workers compensation fund to an injured worker is compensation. After substituting "principal" for "employer," and giving the terms "proceedings" and "compensation" their ordinary meanings, this provision states the Fund may bring proceedings against the principal to recover any compensation it paid to an injured worker out of the Fund.

The Kansas Supreme Court rejected Trademark's arguments in *Silicone Distributing* and again in *Duarte*, 276 Kan. at 608-10. We reject them now.

15

Trademark argues that if "principal" is substituted for "employer" in K.S.A. 44-532a(b), then "principal" must also be substituted for "employer" in K.S.A. 44-532a(a) and the principal must be uninsured and insolvent before a cause of action may be brought. In so arguing, Trademark appears to be adding a requirement to K.S.A. 44-503 that ALL references to "employer" in the Act must be substituted with the term "principal" or none can be. At the very least, the statute is ambiguous on this point and the court can look to the purpose of K.S.A. 44-503 to determine the legislative intent.

As we stated above, the purpose of K.S.A. 44-503 was to make principal contractors liable to pay workers compensation to employees of their uninsured subcontractors so that principal contractors could not contract out work to get around the Act. This provision was enacted long before the Fund was created, and there is no indication that the principal contractor's liability was meant to be replaced by the Fund. If the Fund could not pursue principal contractors in this situation, then K.S.A. 44-503 would be meaningless unless the injured worker chose to sue the principal contractor rather than their direct employer, which the worker would not know to do. The Fund would become the principal's insurance when the principal subcontracts out work. That interpretation would subvert one of the goals of the Act—the inclusion of workers and contractors into coverage and not the exclusion of them. We do not hold that the Legislature intends the Fund to be the insurer of principal contractors.

The creation of the Fund did not displace the long-standing rule that a principal remains contingently liable should a subcontractor be unable to pay an award. The worker is entitled to implead the Fund so the worker can be expeditiously paid. After the Fund satisfies a claim to the employee, the Fund "steps into the shoes of the employee" and may pursue a claim against the principal. See *Olds-Carter v. Lakeshore Farms, Inc.*, 45 Kan. App. 2d 390, 408, 250 P.3d 825 (2011). This is all part of the sorting out process mentioned above.

16

To sum up the facts, we note that Juan Medina, a man who worked for Doroteo Ballin fell off a ladder and was injured on the job. Ballin was insolvent and had no workers compensation insurance. Ballin's contractor was Trademark, Inc. The ALJ found the Workers Compensation Fund responsible for paying the benefits. In its lawsuit seeking reimbursement of what it had spent for Medina's compensation, the Fund was granted summary judgment.

To sum up the law, we hold that for many reasons, the district court correctly granted judgment to the Fund over Trademark. The judgment promotes the aims of the Act—the prompt payment of benefits to injured workers, the responsibility of contractors to provide benefits for injured workers of their subcontractors, and duty of employers to reimburse the Fund. After all, the workers compensation law, K.S.A. 44-503, requires a contractor to be responsible for workers compensation benefits for the workers of its subcontractors. The statute, K.S.A. 2020 Supp. 44-532a(b), gives the Fund a cause of action to recover what it has paid as workers compensation benefits to injured workers. And the Supreme Court's ruling in *Silicone Distributing* is reasonable and must be followed.

We must affirm the district court's grant of summary judgment to the Fund over Trademark.

*We reject the Fund's cross-appeal.*

In its motion for summary judgment, the Fund sought "attorney fees and costs in the amount of $8,053.95, which fees and costs continue to accrue." The district court ruled that no statute or contractual provision allowed the recovery of attorney fees in this case.

17

The district court was correct. A court may not award attorney fees with no statutory authority or an agreement by the parties. *In re Marriage of Williams*, 307 Kan. 960, 982, 417 P.3d 1033 (2018). The Fund says there is such statutory authority here.

The Fund contends that K.S.A. 44-532a(b) allows the recovery of attorney fees because it permits recovery of "any amounts paid from the workers compensation fund pursuant to this section."

K.S.A. 2020 Supp. 44-532a reads:

"(a) If an employer has no insurance or has an insufficient self-insurance bond or letter of credit to secure the payment of compensation, as provided in subsection (b)(1) and (2) of K.S.A. 44-532, and amendments thereto, and such employer is financially unable to pay compensation to an injured worker as required by the workers compensation act, or such employer cannot be located and required to pay such compensation, *the injured worker may apply to the director for an award of the compensation benefits, including medical compensation, to which such injured worker is entitled, to be paid from the workers compensation fund.* Whenever a worker files an application under this section, the matter shall be assigned to an administrative law judge for hearing. If the administrative law judge is satisfied as to the existence of the conditions prescribed by this section, the administrative law judge may make an award, or modify an existing award, and prescribe the payments to be made from the workers compensation fund as provided in K.S.A. 44-569, and amendments thereto. The award shall be certified to the commissioner of insurance, and upon receipt thereof, the commissioner of insurance shall cause payment to be made to the worker in accordance therewith.

"(b) *The commissioner of insurance*, acting as administrator of the workers compensation fund, *shall have a cause of action against the employer for recovery of any amounts paid from the workers compensation fund pursuant to this section.* Such action shall be filed in the district court of the county in which the accident occurred or where the contract of employment was entered into." (Emphases added.)

18

We cannot ignore the limiting phrase, "pursuant to this section." K.S.A. 2020 Supp. 44-532a(b). The amounts contemplated by "this section" are defined in subsection (a). See *Stanley v. Sullivan*, 300 Kan. 1015, 1019, 336 P.3d 870 (2014) (a "section" refers to the entire statutory section, not merely to one subsection). The amounts are the "award of the compensation benefits, including medical compensation, to which such injured worker is entitled." K.S.A. 2020 Supp. 44-532a(a). Thus, the amounts paid from the Fund under K.S.A. 2020 Supp. 44-532a do not include the Fund's attorney fees.

A statute must specifically authorize recovery of "attorney fees" rather than use general language such as "costs" or "expenses." *Harder v. Foster*, 54 Kan. App. 2d 444, 463, 401 P.3d 1032 (2017); *Hershaw v. Farm & City Ins. Co.*, 32 Kan. App. 2d 684, 689, 87 P.3d 360 (2004). The language in K.S.A. 2020 Supp. 44-532a does not specifically authorize attorney fees.

The Legislature had no difficulty expressing elsewhere in the Act when recovery of attorney fees is permitted. For example, K.S.A. 2020 Supp. 44-566a states that the Fund may recover attorney fees against a party who impleaded the Fund improperly, but this does not apply to "impleadings pursuant to K.S.A. 44-532a." Thus, recovery of the Fund's attorney fees is not permitted in this case.

In an alternative argument, the Fund suggests that an award of attorney fees should be allowed because Trademark could have entered the workers compensation proceeding and defended the action after being put on notice that it was potentially liable for Medina's claim.

This argument is not persuasive. Nothing in K.S.A. 44-503 or the *Silicone Distributing* case requires a principal contractor to intervene in the proceedings under such circumstances. Trademark did not commit a tort or violate a contractual duty. See *Foster*, 54 Kan. App. 2d at 473 (discussing third-party litigation exception to the

19

American rule that proscribes courts from awarding attorney fees unless specifically authorized by statute or contract). The district court did not err.

For the reasons we have outlined above, we must deny the Fund's motion for attorney fees expended for this appeal. Since the district court could not award fees, neither can we.

We affirm the court's judgment to the Fund over Trademark. We affirm the court's denial of the Fund's request for attorney fees.